PORTER and another *against* THE PEQUONNOC MANUFACTURING COMPANY.

Where the plaintiff, in an action for injuries done to his property on a watercourse, by the defendant's dam on the same stream above being carried away, during a freshet, claimed, that such carrying away of the dam resulted from its unreasonable height and its defective materials and construction; and to establish this claim, the plaintiff introduced a witness, having no peculiar skill in the mode of constructing dams, who testified, that he had been acquainted with the stream in question, for a great many years; that the waters in it rise very rapidly, in times of freshet, and a great deal of water passes where the defendant's dam was; that said dam was built very high—higher than any dam he had ever known—keeping back a very large and deep pond of water; and that, in his opinion, under such circumstances, such a dam as the defendant's dam was, could not stand; it was held, 1. that the facts thus stated, were unexceptionable evidence; 2. that the opinion of the witness, in connexion with such facts, was admissible.

Where there are two counts in the declaration, and the evidence is applicable to both, though the allegations in one admit of its application with more distinctness and perspicuity than in the other, the jury are not restricted in their finding to either, but may give a general verdict.

THIS was an action on the case, in two counts. In the first count, the plaintiffs alleged, that they were the proprie-

*Fairfield,*
June, 1845.

Porter
*v.*
The Pequon-
noc Manufac-
turing Compa-
ny.

tors in fee-simple of a parcel of land in *Bridgeport*, contain-
ing about forty square rods, through which a natural stream
of water, or water-course, called the *Pequonnoc* river, flowed;
that on this land there were two mills and a dam, owned by
the plaintiffs ; that said dam was erected in a firm and sub-
stantial manner across said stream and of a suitable height ;
that the plaintiffs and those whose estate they hold, had, for
a period of time whereof the memory of man runneth not to
the contrary, used and exercised the right and privilege of
keeping up said dam and using the water in said stream, for
the purpose of propelling their mills ; that the defendants, well
knowing the premises, and disregarding the just rights of the
plaintiffs, did, on or about the 1st day of *October*, 1837, con-
struct on said stream, about eighty rods above the premises
of the plaintiffs, a certain dam across said stream, of an unusual
and unreasonable height, *viz.* thirty feet, whereby the water
in said stream was obstructed, and prevented from flowing in
its natural course, and whereby large quantities of water
were collected together and raised to a great height, thereby
endangering the dam and buildings of the plaintiffs ; that said
dam of the defendants was built by them of such poor and
unsuitable materials, and in such a weak, unskillful and un-
workmanlike manner, that on the 20th of *March*, 1843, while
the water was, by said dam of the defendants, raised to such
an unreasonable and dangerous height, it gave way, and the
materials thereof, together with vast masses of earth, stone
and timber, were precipitated and thrown, by the accumula-
tion of water, upon said dam and mills of the plaintiffs, and
broke, tore down, carried away and destroyed said dam and
one of the mills of the plaintiffs, and removed the other mill
of the plaintiffs from its place, and otherwise greatly injured it.

In the second count, the plaintiffs alleged, that on the 20th
of *March*, 1843, they were seised and lawfully possessed, in
their own right in fee-simple, of a certain parcel of land in
*Bridgeport*, on both sides of the *Pequonnoc* river, with a dam
across said stream and two mills standing on the premises;
that being so seised and possessed, a certain dam, which the
defendants had, before that time, erected across said stream,
above the premises of the plaintiffs, in consequence of its be-
ing built, by the defendants, in a weak and unskillful manner,
and in consequence also of its being raised, by the defend-

ants, to an unusual and unreasonable height, broke and gave way, and a large quantity of water, which had, by said dam of the defendants, been accumulated and raised to a great height above the natural current of the stream, flowed, with great force and violence, against the dam and mills of the plaintiffs, and broke, carried away and destroyed the same.

*Fairfield,*
June, 1845.

Porter
*v.*
The Pequon-
noc Manufac-
turing Compa-
ny.

The cause was tried, on the general issue, at *Fairfield,* *February* term, 1845, before *Waite*, J.

On the trial, the plaintiffs claimed, that the stream upon which the defendants' dam was built, was accustomed, in times of freshet, to rise very rapidly ; that said dam was built of an unusual and unreasonable height, *viz.* of the height of more than twenty feet ; that the quantity of water thereby kept back and ponded, was so great, that if the dam gave way, the water would inevitably sweep away and destroy the plaintiffs' works, situated on the stream below ; that said dam was negligently and unskillfully built, over which the waste water was permitted to flow, and which, falling from a great height upon the ground near the dam, exposed the dam to be undermined and carried away ; and that the injury complained of in the declaration, resulted entirely from the unreasonable, negligent and unskillful conduct of the defendants in the construction and management of their dam.

The defendants denied, that their dam had been built too high, and claimed, that it was well built, of the best materials, and in a skillful and workmanlike manner, and was carried away solely by the inevitable violence of an unprecedented freshet, and without any fault, negligence or want of skill on their part.

The plaintiffs, in support of their claim, offered the testimony of *Philip Walker* and *Isaac Walker*, to prove, that the defendants' dam was built too high, and was unsafe ; and upon being inquired of, by the defendants' counsel, as to their skill in constructing dams, stated, that they were unaccustomed to build dams, and had no particular skill in the mode of constructing them.

The defendants' counsel thereupon objected to any opinion or judgment of the witnesses, as to the height of the defendants' dam.

The court decided, that the mere opinions of the witnesses, unaccompanied by the facts upon which their opinions were founded, were not admissible.

*Fairfield*,
June, 1845.
———————
Porter
*v.*
The Pequon-
noc Manufac-
turing Compa-
ny.

The witnesses thereupon testified, that they had been acquainted with the stream, for a great many years ; that the waters in it rise very rapidly, in times of freshet ; a great deal of water passes where the defendants' dam was ; that said dam was built very high, higher than any dam they had ever known—more than twenty feet high—and keeping back a very large and deep pond of water; and that, in their opinion, under such circumstances, such a dam as the defendants' was, could not stand ; which testimony was admitted.

The plaintiffs also called *Elam Nichols* as a witness, who testified, that at the time when the defendants' dam was carried away, he was a workman in the defendants' employ ; that just before said dam was carried away, perceiving that the waters were rising very rapidly, and pouring over the dam with great violence, he hoisted all the gates in the defendants' dam, to let off the water ; and fearing that the dam would be carried away, went to *Thomas F. Bunnel*, the agent, and one of the principal stockholders of the defendants' company, and asked him, if it would not be better to cut a sluice-way *East* of a small hill at the *East* end of the dam, to let off a portion of the water ; and stated to him, that as the water was rising so rapidly, he thought it would be better to have it cut, and that it could easily be done ; to which *Bunnel* replied, he did not think there was any danger ; and that to make the sluice-way, would be a needless expense. After this testimony was received, the defendants' objected to its admission, on the ground that there were no averments in the declaration, authorizing the admission. The plaintiffs did not claim that there were ; and no further notice was taken of the testimony, in the progress of the trial.

The defendants claimed, that no evidence that their dam was carried away in consequence of its unreasonable height, was admissible, under the first count in the declaration ; and if the jury should find, that said dam was carried away in consequence of such unreasonable and improper height, and not in consequence of its having been built of poor and unsuitable materials, and in a weak, unskillful and unworkmanlike manner, they could find a verdict against the defendants on the second count only, in the declaration ; and that, as the plaintiffs claimed to recover against the defendants for one cause of action only, the plaintiffs could recover a verdict only

upon one count; and prayed the court so to instruct the jury. The jury were not instructed in the manner claimed by the defendants.

*Fairfield,*
June, 1845.

Porter
*v.*
The Pequonnoc Manufacturing Company.

The jury returned a verdict in favour of the plaintiffs, on both counts; and the defendants thereupon moved for a new trial, claiming that the court erred in admitting the testimony, and in omitting to charge the jury as requested by them.

*Hawley* and *Booth*, (with whom was *Loomis*,) in support of the motion, contended, 1. That the testimony of the *Walkers* was inadmissible. In the first place, the mere opinion of a witness not skilled in the subject of investigation, is not evidence. 1 *Phil. Ev.* 290. 2 *Saund. Pl. & Ev.* 952. *Jefferson Insurance Company* v. *Cotheal,* 7 *Wend.* 72. *Folkes* v. *Chadd,* 3 *Doug.* 157. (26 *E. C. L.* 63.) Secondly, the facts sworn to, by these persons, were not such as to make their opinions, in connexion with those facts, admissible.

2. That the testimony of *Nichols,* as to what he said to *Bunnel,* and as to *Bunnel's* reply, was clearly inadmissible. In the first place, it was irrelevant to the issue. Secondly, it was a conversation between third persons, out of court and not under oath.

3. That the two counts in the declaration are substantially different; and therefore, evidence to show damage occasioned by unreasonable height of the dam, was inadmissible under the first count. Consequently, if the jury find for the plaintiffs, for that cause, their verdict should be on the second count, and not on the first.

*Bissell* and *Dutton,* contra, contended, 1. That the testimony of *P.* and *J. Walker* was properly admitted. Here, it is material to inquire what the testimony of these witnesses really was. They were not called upon to express an opinion as to the construction of the defendants' dam; but merely that it was so high as to be unsafe. The *facts* testified by them were undoubtedly relevant; and they were called upon to give their opinion upon those facts, or in connexion with them. The only objection is, that the witnesses were not *experts*; *i. e.* that they were not skilled in the mode of constructing dams. Now, in the first place, how does it appear that they were not experts in regard to the point to which

HARVARD LAW LIBRARY

*Fairfield,*
June, 1845.

Porter
*v.*
The Pequon-
noc Manufac-
turing Compa-
ny.

they testified ?   But secondly, admitting they were not experts, was not their testimony clearly admissible, within the principles settled by this court?   *Grant* v. *Thompson*, 4 *Conn. R.* 203.   *Morse* v. *State*, 6 *Conn. R.* 9.   *Kinne* v. *Kinne*, 9 *Conn. R.* 102.   The uniform practice is believed to be in conformity with the decision of the court below on this point.

2. That the defendants have no ground of complaint in regard to the testimony of *Nichols.*   The specific objection to this testimony, is, that it supports no averment in either count in the plaintiffs' declaration.   The evidence was not claimed as a substantive ground of recovery ; but was introduced to meet the defence set up in the cause.   For this purpose, it was clearly admissible.   The claim on the part of the defendants, was, that the dam was carried away, by the irresistible violence of an unprecedented freshet, and without any negligence or want of skill on their part.   Did it not conduce to prove negligence, that they had provided no waste-way for this vast accumulation of water ?   Again ; one claim on the part of the plaintiffs, was, that the waste water was permitted to flow over the dam, and that falling from so great a height upon the ground near the dam, the dam was liable to be undermined and carried away.   Was not the neglect to provide a waste-way evidence of negligence and want of care in the construction of the dam ?

3. That the charge to the jury was unexceptionable.

In the first place, it was claimed, on the trial, that no evidence that the dam was carried away in consequence of its unreasonable height, was admissible under the first count.   But what are the averments in that count ?   It is averred, that the defendants erected their dam of an *unusual and unreasonable height ;* that large quantities of water were collected together, and raised to a great height, *thereby endangering* the dam and mills of the plaintiffs ; and that while the water was, by said dam of the defendants, so raised to such an *unreasonable and dangerous height*, the dam gave way, &c.   Why was the height of the dam a source of danger?   Clearly, for no other reason than that it was liable to give way.   The whole frame of the count shows, that its *height*, as well as the poor materials and the unskillfulness of its construction, was the cause of its being swept away.

Secondly, it was insisted, that as the plaintiffs claimed to

recover for one cause of action only, they could recover on one count only. The only distinct ground on which this claim was rested, was, that the evidence last considered was inapplicable to the first count. That has already been considered. The claim then rests on the general ground that where there are several counts for one and the same cause of action, the verdict must be on one count only, and that a general verdict cannot be given. Such is not the rule. 1 *Chitt. Plead.* 390. 394. 1 *Sw. Dig.* 604. *Wolcott* v. *Coleman*, 2 *Conn. R.* 337. 338.

Again; what has the party suffered, by a general verdict? Unless the court can see that he can be injured, by the course taken, a new trial will not be granted.

*Fairfield,*
June, 1845.
———
Porter
*v.*
The Pequon-
noc Manufac-
turing Compa-
ny.

STORRS, J. The first question before us respects the admissibility of the testimony of the *Walkers*. It does not clearly appear from the motion, that the objection of the defendants went any farther than to the reception of the mere opinions of these witnesses, unconnected with their statement of the facts on which their opinions were founded; and if it did not, they have no cause of complaint, as the court below decided, that such opinions were inadmissible. If, however, the fair construction of the motion is, that the objection was to the statement of the witnesses in connexion with the facts on which they were founded, we are of opinion, that such testimony was properly received.

It is not questioned, that it was competent for these witnesses to state their knowledge of the stream on which the defendants' dam was built, and its character as to the rapidity of its rise in times of freshet, and the quantity of water, which, at such times, would accumulate in the pond, as well as the manner in which the dam was constructed. But the defendants insist, that they should not have been permitted to go further, and express their opinions as to the sufficiency of the dam to sustain the pressure of the water upon it, at such times, on the ground that they professed to have no peculiar skill as to the mode of constructing dams, and that such opinions could come only from those possessing such skill.

It does not appear to have been claimed, that the dam in question was not built in the ordinary mode, or that there was any thing peculiar in the fashion of it, or the principles

*Fairfield,*
June, 1845.

Porter
*v.*
The Pequon-
noc Manufac-
turing Compa-
ny.

on which it was constructed.   But the claim was, that it was deficient in strength, independent of any peculiarity in the mode of its construction.   Its sufficiency in this respect, depended, not merely on the question whether it would sustain the quantity of water which would be accumulated by it, but whether it was capable of sustaining it in connexion with the unusually sudden and violent manner in which it was accumulated in that stream.   The judgment or opinion of these witnesses, as practical and observing men, was sought on this point, on the facts within their knowledge, and to which they testified.   They had acquired, by their personal observation, a knowledge of the character of the stream, and also of the dam, and were therefore peculiarly qualified to determine whether the latter was sufficiently strong to withstand the former.   The opinions of such persons, on a question of this description, although possessing no peculiar skill on the subject, would ordinarily be more satisfactory to the minds of the triers, than those of scientific men, who were personally unacquainted with the facts in the case ; and to preclude them from giving their opinion on the subject, in connexion with the facts testified to by them, would be to close an ordinary and important avenue to the truth.   Indeed, if none but professional persons could be heard on such an inquiry, the result must often be left to be determined by mere conjecture.   It is impossible for a person, however skilful or scientific, to give an intelligent or precise opinion on facts testified to by another witness, in the manner in which they are frequently related. Such witness may detail, in the best manner he can, the facts on the subject of which the opinion of a scientific person is sought ; but it may be impossible to extract from his testimony the *data* for such an opinion, with sufficient precision or certainty.   The present case furnishes a striking illustration of this remark.   The witnesses stated, that the water in the stream across which the defendants' dam was placed, rose very rapidly, in times of freshet ; and that a great deal of water passed where that dam was ; that the dam was built very high—higher than any they had ever known—more than twenty feet high, and keeping back a very large and deep pond of water ; but how rapidly it rose, what quantity of water passed, how high the dam was, or how large or deep a pond of water was kept back, does not appear, nor could the

*Fairfield,*
June, 1845.

Porter
*v.*
The Pequon-
noc Manufac-
turing Compa-
ny.

witnesses state with definiteness.  It is obvious, that no pecu-
liar skill on the subject would enable one to give an opinion
on the sufficiency of the dam, based on such testimony, which
would be a sure guide to the opinions of the triers.  Nor
would the statement of any abstract principles, by scientific
witnesses, be of more essential use to them in connexion with
such testimony.  The subject of inquiry, in this case, which
was the strength of the defendants' dam, was not, however,
one on which it was necessary to call such witnesses.  On
such a question the judgment of ordinary persons, having an
opportunity of personal observation, and testifying to the facts
derived from that observation, was equally admissible, what-
ever comparative weight their opinions might be entitled to,
of which it would be for the jury to judge.  It was a question
of common sense, as well as of science.

The authorities fully sanction the reception of the opinions
of the witnesses offered in this case.  They show the general
rule to be, that the opinions of witnesses are not evidence ;
but that there are several exceptions to it, and that the pres-
ent case falls within one of them.  In one class of these ex-
ceptions, the mere opinion of the witness is evidence ; as, for
instance, where he is an *expert,* so termed, or is called to
prove the identity, or the hand-writing of a person, or the
value of property.  But there is another class of exceptions,
in which the opinion of the witness is evidence in connexion
with the facts testified to by him, on which it is founded.
Thus, it was held in *Grant* v. *Thompson, 4 Conn. R.* 203.
where the defence of lunacy was interposed, in an action on
a promissory note, that the opinions of witnesses, although
not professional, were admissible in connexion with the facts
on which they were founded.  So in *Root* v. *Richardson,* 3
*Mass. R.* 330. and *Dickinson* v. *Barber,* 9 *Mass. R.* 227. the
subscribing witnesses to a will were held to be competent to
testify as to the sanity of the testator.  In *Wogan* v. *Small,*
11 *Serg. & Rawle,* 121. and in *Harrison* v. *Rowan,* 3 *Wash.
C. C. Rep.* 580. other witnesses, who spoke from actual
knowledge of the testator, were allowed to express their opin-
ions as to his sanity ; and in *Rambler* v. *Tryon,* 7 *Serg. &
Rawle,* 90. it was held, that facts, and opinions of the sanity of
a testator founded on them, may be received from any of his
acquaintances.  So also in *Morse* v. *The State,* 6 *Conn. R.* 9.

*Fairfield.*
June, 1845.

Porter
*v.*
The Pequon-
noe Manufac-
turing Compa-
ny.

although the mere naked opinion of the witness as to the age of a person, was rejected, the court were of opinion, that if the witness had stated the facts indicative of age, his opinion, in connexion with them, would have been admissible. We think, that these cases, and the reasons on which they were decided, apply to the point before us, and justify the admission of the testimony in question.

As to the testimony of *Nichols*, it does not appear to have been called for, by the plaintiff; and when objected to afterwards, by the defendants, on the ground that its admission was not authorized by any of the averments in the declaration, the plaintiffs did not claim that it was, and no use was made of it by him; for it is stated in the motion, that no further notice was taken of the testimony in the progress of the trial. It crept in, as the motion shows, merely through the inadvertence of the witness, and could not, under the circumstances, have produced any injury to the defendants. A new trial, therefore, should not be granted on this account.

The defendants claim, that the jury should have been instructed to return a verdict for the plaintiffs on the second count only of the declaration, if they found that the defendants' dam was carried away in consequence of its unreasonable and improper height, and not in consequence of its bad materials or improper construction. This point depends on the admissibility of evidence under the first count to show that the improper height of the dam was the cause of its destruction : for if such evidence was legally applicable to the first count, there is no rule which requires the jury to apply it to the other. We are of opinion, that on a fair construction of these counts, the carrying away of the dam, is, in both, alleged to be in consequence of its improper height, and also of its bad materials and construction ; and therefore, that in this respect, they are alike. In the second count, the injury is imputed to these causes with more distinctness and perspicuity than in the first ; but we perceive no difference between them as to their true and substantial import. As the evidence therefore applied to both counts, the jury should not have been restricted in their verdict to either.

For these reasons, a new trial is not advised.

In this opinion the other Judges concurred.

New trial not to be granted.