CAROLINE E. BARBER *vs.* EDWARD MANCHESTER ET AL.

First Judicial District, Hartford, March Term, 1900. ANDREWS, C. J.,
TORRANCE, BALDWIN, HAMERSLEY and HALL, Js.

The trial judge may properly refuse to add to a finding which already
contains all facts necessary to a proper presentation of the ques-
tions of law decided upon the trial.

Proof that a horse of ordinary gentleness was in fact frightened by the
operation of a ensilage cutter and hoist near the highway, is
undoubtedly evidence tending to prove that the operation of such
a machine is likely to frighten horses of that character ; but it is
not *per se*, and as matter of law, decisive of that fact, nor of the
negligence of the defendant, who located and operated the ma-
chine. The weight to be given to such evidence as well as the
whole question of the defendant's negligence, are matters for the
determination of the trier in view of all the evidential facts and
circumstances.

One operating machinery near the highway is under no legal obliga-
tion to notify travelers of its presence, provided such operation is
not likely to frighten horses of ordinary gentleness.

There is no rule of law prescribing just what or how many facts or
circumstances must be proved before a witness can give his
opinion. The sufficiency of his experience and opportunity of
observation is largely a matter of judicial discretion.

Practical and observing men acquainted with the subject, may state
whether a given object near the highway would be likely to frighten
horses of ordinary gentleness. Evidence of this character is not,
properly speaking, expert testimony, but is rather a statement
of the results of observation and knowledge, upon a matter the
elements of which are so complex and involved that their adequate
presentation in detail is impracticable.

Whether a notice of the taking of depositions, which contains neither
the names of the witnesses to be examined nor the authority before
whom they are to testify, is "reasonable notice," within § 1068 of
the General Statutes, *quære*.

( *One judge dissenting.* )

Argued March 7th—decided April 4th, 1900.

ACTION to recover damages for personal injuries claimed
to have been caused by the defendants' negligence, brought
to the Superior Court in Litchfield County and tried to the
court, *Shumway, J.;* facts found and judgment rendered for

the defendants, and appeal by the plaintiff for alleged errors in the rulings and findings of the court. *No error.*

The court found that on the day in question the plaintiff Caroline E. Barber was riding, as an invited guest, in a carriage in company with her daughter and granddaughter, along a highway in the borough of Winsted. This road was traveled about the same as the average town road outside the borough, and is one of the direct roads to the town of Colebrook.

The defendants were engaged in cutting corn for ensilage to fill a silo upon their farm situated in said borough near the highway above-named, with a machine called an ensilage cutter, the power for driving which was furnished by a small portable steam-engine. The engine was about five horsepower, and, with the boiler, was about two feet square and about three feet high. The smokestack extended about six feet above the engine and boiler. The steam was exhausted into the smokestack. The engine was nearly noiseless when in motion. A carrier, which caught the ensilage and conveyed it into the silo, was attached to the cutter, consisting of an endless chain with buckets or cleats about one foot apart, the whole revolving while the machine was in motion. The carrier was about fourteen feet in length, and, when the upper end was put into the opening in the silo, was inclined at an angle of between forty-five and sixty degrees. The power from the engine was communicated to the cutter through a belt about twenty feet in length. The engine, belt, cutter and carrier, were about thirty feet in length and occupied that space upon the ground. The cutter and carrier made some noise when in motion, but no more than was necessary for such a machine. The engine and cutter were upon land which had formerly been, with the defendants' other land, enclosed from the highway by a fence. The engine was from 15 feet 3 inches to 17 feet distant from the nearest wheel track in the highway, and the other machinery farther away from the highway.

The defendants had used the same engine, cutter and appliances, in substantially the same place and for the same

purpose, for three successive years before the day named, and for a period of four to six days in each year. There was no evidence that any other ensilage cutter was or had been used in the borough of Winsted at any other time or place.

The engine and machinery were exposed to view of persons passing along the highway for some distance. The view of the machinery from the south was obstructed, at the time the plaintiff approached the place, by the cornstalks which had been placed at the machine to be cut.

The plaintiff approached from the south, riding in the wagon with her daughter, and when they were at a distance of about 50 feet from the spot where the engine was standing and in operation, the horse, driven by the daughter, suddenly bolted, turned around in the road, the wagon was nearly if not entirely overturned, the occupants of the wagon were thrown upon the ground, and the horse ran back in the direction from which they were driving. The plaintiff's injuries were substantially as described in the complaint.

It did not appear that the plaintiff or her daughter noticed any unusual noise before the horse bolted, but there was no evidence of any cause for the horse to bolt other than the proximity of the engine and machinery, and the court found that the horse was startled by the noise therefrom.

The horse was one of ordinary gentleness, though accustomed to shy at unusual sights and sounds.

The driver was driving slowly, but because of the sudden and unexpected starting of the horse, not having it well in hand, she was unable to control it before she was thrown out.

There was no sign to warn approaching teams of the presence of the machine.

The court found that the engine, belt, cutter and carrier, and other appliances in use with them, were not objects calculated to frighten horses of ordinary gentleness, and that there was no legal duty on the part of the defendants which they failed to perform, or which they improperly performed; that ordinary prudence and foresight on the part of the de-

fendants did not, under all the circumstances, require them to use any device or take any precaution to prevent horses from being frightened by said engine and machinery; and that there was no negligence on the part of the defendants, and none on the part of the plaintiff.

One Beach, a witness for the defendants, having testified that he was a farmer and lived in the town of Winchester, that he had seen the ensilage cutter and had worked on it at Manchester's and away from there, was asked whether, in his opinion the ensilage machine and engine, running, would be an object to frighten horses of ordinary gentleness. The plaintiff objected to this question, on the ground that the witness was not qualified. The court overruled the objection. It subsequently appeared on cross-examination that the witness had not seen the ensilage cutter in operation at Manchester's place, but no other objection was made to the testimony in chief, and there was no other ruling thereon.

Horace W. White, a witness for defendants, having testified that he was a farmer and lived in Colebrook, that he had seen the ensilage machine in operation at Manchester's the year they built their silo, that he owned a horse and had driven horses all his life, that he had seen the engine running, was asked: "How about the noise of the engine?" To this question the plaintiff objected, on the ground that it was not brought near the time of the accident. Defendants' counsel stated that he should offer evidence to show that it was the same machine and engine, that it had been used for three successive years in the same place, and such evidence was subsequently offered. The objection of the plaintiff was overruled. The witness was then asked: "What would you say as to the engine, when in operation, frightening horses of ordinary gentleness?" To this question the plaintiff objected, on the same ground, and the objection was overruled.

Dr. Drake, a witness for the defendants, having testified that he had driven horses but little for twenty-five years, that he was at the Manchesters to call upon Edward Manchester, and saw the engine and cutter in operation, observed its location, and noticed that the engine made little noise,

that he had no horse that day but walked to the place, that the only horses he saw about the engine and cutter were drawing the corn to the machine at the time—was asked whether the engine itself, exclusive of the ensilage machine, in his opinion would frighten horses of ordinary gentleness? The plaintiff objected to this question, on the ground that the witness knew but very little about horses for the last twenty-five years, and there was no foundation for his opinion. The objection was overruled.

The defendants offered in evidence in chief the deposition of one Edwin Sheffer. The time specified in the notice for taking said deposition was agreed upon between the parties before the acceptance of service. The notice states "that the depositions of sundry witnesses, to be used on the trial of the above-entitled action, will be taken by the defendants therein on the 3d day of June, 1899, at 10 o'clock in the forenoon, at the office of Aldrich, Winslow and Worcester, in the Second National Bank Building, in Aurora, county of Cane, and State of Illinois, before some proper authority, and at such times and places as such authority shall fix by adjournment."

To the admission of such deposition the plaintiff objected, upon the grounds that it contained neither the names of the witnesses to be examined, nor of the authority before whom the depositions were to be taken. " Due and legal service " of said notice was accepted in writing.

The court overruled the objections and admitted the deposition.

The plaintiff claimed in substance, as matters of law: *First*. That if the horse behind which the plaintiff was riding was a horse of ordinary gentleness and was in fact frightened at the engine and machinery erected by the defendants, or at the noise caused thereby, and in consequence of such fright ran away, injuring the plaintiff, without negligence on her part, the defendants were liable. *Second*. That if the horse behind which the plaintiff was riding was a horse of ordinary gentleness and did in fact become frightened at said engine and machinery, and the noise caused

thereby, resulting in injury to the plaintiff, without negligence on her part, then the opinion-evidence of the witnesses called by the defendants to prove that said engine and machinery were not objects calculated to frighten horses of ordinary gentleness, should not and could not as a matter of law outweigh the said facts and relieve the defendants of liability, but that said defendants should be held liable for such injury. *Third.* That the law imposed some duty upon the defendants to notify the traveling public upon said highway of the presence of said machinery, and required a greater amount of caution on the part of the defendants to prevent accident when such machinery was in operation within the borough of Winsted, than on a less traveled country road, and a greater degree of care than was taken by the defendants.

The court overruled these claims.

In addition to said rulings the plaintiff assigned, as reasons of appeal, certain exceptions to the refusal of the trial judge to correct the finding of facts; and the evidence bearing upon the requested corrections was certified in the record.

*Leonard J. Nickerson* and *Richard T. Higgins*, for the appellant (plaintiff).

*Samuel A. Herman* and *Wilbur G. Manchester*, for the appellees (defendants).

HALL, J. A discussion of the several exceptions of the plaintiff to the finding of facts, is unnecessary. An examination of the evidence made a part of the record, shows that the finding contains all the facts proved which are material to a proper presentation of the questions of law decided by the court below. There was no error in the refusal to make the requested corrections.

Proof that the plaintiff's horse was one of ordinary gentleness, and was frightened by the noise of the machinery, without fault of the plaintiff, does not necessarily render the defendants liable for the injury sustained.

The foundation of the action is the alleged negligence of the defendants. The acts constituting such negligence were the placing and operating near the traveled path of the highway, of the engine and machinery described in the finding, which are alleged to have been a nuisance, because they were calculated to frighten horses of ordinary gentleness passing over the road.

It appears that the machinery was placed outside of the limits of the highway, and upon the defendants' land, and that it was not a nuisance *per se.*

In using their own property upon their own land the defendants were, however, bound to exercise reasonable care to avoid injuring the persons or property of others. One of the principal inquiries in the case was whether the act of the defendants in placing and operating this machinery so near a public highway, was a reasonable use of their property; and that, under the pleadings, depended upon the question of whether these objects, when so placed and operated, were naturally calculated to frighten ordinarily gentle horses traveling upon the highway. Proof that the plaintiff's horse, which was one of ordinary gentleness, was frightened by the noise of the machinery, was undoubtedly evidence that it was of a character likely to frighten such horses, but it was not conclusive proof of that fact. It may have appeared that of a great number of horses of ordinary gentleness which, during the three seasons the ensilage cutter had been used at this place, had passed it under precisely the same circumstances, the plaintiff's was the only one which had been frightened. It can rarely be said of the commonest objects near the road, that they will never frighten an ordinarily gentle horse. Generally the most positive assertion one can make is that there is no reasonable probability of such a result. The exercise of reasonable care to avoid injury to others, while using their own property, forbade the defendants from operating near the highway a machine of such a nature that there was a reasonable probability of its noise or appearance frightening horses of ordinary gentleness.

It would have been no answer to the complaint that the

defendants did not know or believe that the machinery operated at this place was likely to frighten horses, if they ought to have known it. They were chargeable with the knowledge of men of ordinary intelligence and experience in such matters. They were bound to know whether there was a reasonable probability that passing teams would become so frightened by these objects as to endanger the persons and property of those lawfully using the highway.

On the other hand, the law did not restrict the defendants to a use of their ensilage machine in places where, from its noise and appearance, it could not frighten horses upon the highway, but only to those places where it was not likely to have that effect.

The practical question to be decided upon that branch of the case was whether a person of reasonable prudence and foresight, having due regard for the rights of others to drive over this highway, and for the safety of their persons and property, would under the circumstances have anticipated that the operation of this engine and machinery, at this place, would frighten an ordinarily gentle horse passing along the road. By an averment that a certain object is calculated or likely to frighten horses of ordinary gentleness, is meant that such is a result which was to have been reasonably expected.

The question whether a given object is of a nature calculated to frighten horses of ordinary gentleness is one of fact, to be determined not only from the effect which it is shown to have had upon horses in particular instances, but from evidence of its position and motion, of the noise which it produces, of its form, color, and other characteristics, as well as from the testimony of qualified witnesses whether it is likely to frighten horses. Elliott on Roads and Streets, 449; *House* v. *Metcalf*, 27 Conn. 630; *Dimock* v. *Suffield*, 30 id. 129; *Knight* v. *Goodyear's India Rubber Glove Mfg. Co.*, 38 id. 438, 443; *Ayer* v. *Norwich*, 39 id. 376; *Clinton* v. *Howard*, 42 id. 294, 305; *Parker* v. *Union Woolen Co.*, ibid. 399, 402; *Huntoon* v. *Trumbull*, 2 McCrary (U. S.), 314; *Piollet* v. *Simmers*, 106 Pa. St. 95; *Lynn* v. *Hooper*, 93 Me.

46, citing a number of cases concerning objects calculated to frighten horses.

The conclusion of the trial court upon this question of fact was not erroneous, because it was also found that the plaintiff was free from negligence, and that her horse was of ordinary gentleness.

The plaintiff's claim that the testimony of witnesses that these objects were not calculated to frighten horses, should not and could not outweigh the evidence of the fact that they had frightened the plaintiff's horse, but that that fact, having been proved, the defendants should be held liable, is similar to the question just discussed. It assumes that the fact that the plaintiff's horse was frightened by these objects is conclusive upon the question of the defendants' liability. The ruling of the court was upon the whole, not upon a single element of the claim. We do not construe the finding as stating that the court ruled that the so-called opinion-evidence ought, as a matter of law, to outweigh the fact referred to. The testimony of such witnesses being admissible, its relative weight or probative force as compared with that of the fact that the plaintiff's horse had been frightened, was a question for the trier to determine. It does not follow from the judgment rendered that the court considered the opinions of these witnesses as outweighing such fact, as the record clearly shows that there was other evidence than such opinions, from which the court may have concluded that this machinery was not calculated to frighten horses.

Having found that it was not calculated to frighten horses of ordinary gentleness, the court properly held that the law did not require the defendants to take any precautions to notify travelers of the presence of the machinery near the highway. The court was informed of the character of the place where the machine was operated, and that it was in the borough of Winsted, and having found that the defendants were guilty of no negligence in operating the machinery at that place, it was of no importance whether a greater degree of care was required in operating it there than at some other place.

The questions asked of the witnesses Beach, White and Dr. Drake, were properly admitted. When the inquiry of the witness Beach was permitted, it appeared from his testimony that he had seen and worked upon the defendants' machine. When it became obvious that the witness was mistaken, plaintiff's counsel should have asked to have the testimony stricken out, if he was apprehensive that the court might still consider it as evidence.

We think the facts testified to by Dr. Drake, that he had driven horses but little for twenty-five years, that he had seen the engine and cutter in operation at this place, had observed its location and noticed the noise it made, and had seen the horses about the machine drawing corn to be cut, were sufficient to justify the ruling admitting the question asked of him.

Some facts must be shown as the foundation of such an opinion, but there is no rule of law declaring the precise facts which must be proved before such an opinion may be received in evidence. It is largely a matter of judicial discretion whether a witness has been shown to have sufficient experience and opportunity of observation to render his opinion of value upon a question of this kind.

The testimony of these three witnesses was admissible, not as expressions of opinion by experts, but as statements of "practical and observing men" of the "result of their own observation and knowledge" upon a question, the particular elements of which were so numerous, and the character of which was such, that it was impracticable for them to state to the court in detail all of the facts "as fully and perfectly as they had observed them." The law admitting such evidence is discussed by this court in the familiar cases of *Porter* v. *Pequonnoc Mfg. Co.*, 17 Conn. 249, *Dunham's Appeal*, 27 id. 192, 198, *Clinton* v. *Howard, supra, Sydleman* v. *Beckwith*, 43 id. 9, and the more recent cases of *Ryan* v. *Bristol*, 63 id. 26, and *Turner's Appeal*, 71 id. 305, 315.

The deposition of Edwin Sheffer related only to the question of the character of the plaintiff's horse. The court found adversely to the testimony of the deponent, that the plaintiff's

horse was of ordinary gentleness and that the plaintiff was without negligence. We regard the language of the record as equivalent to a finding that the objects in question were not of a nature calculated to frighten such a horse as that driven by the plaintiff. The appellant makes no claim in her appeal that the fact that the horse was accustomed to shy is inconsistent with its being one of ordinary gentleness. We must therefore consider it as coming fairly within the latter description. As we are unable to see how the admission of this deposition could in any way have harmed the plaintiff, we do not decide whether the provisions of the statute requiring reasonable notice to be given to the adverse party to be present at the time of taking such deposition were complied with.

There is no error.

In this opinion the judges concurred, except HAMERSLEY, J.

HAMERSLEY, J. (dissenting). This case, so far as negligence of the defendants is concerned, is one where the subordinate facts from which liability may or may not be legally inferred, can be readily and clearly stated. It differs wholly from that class of cases in which the conclusion of negligent conduct must be drawn from the mass of evidence and is of such a nature that it cannot be formulated into a series of subordinate facts so as to clearly separate the inferences of law and fact for presentation to a reviewing court.

The trial court has found the subordinate facts, and in the finding substantially states its ultimate conclusion thus: I find the defendants' machine in use and motion was not, under all the circumstances, so fitted to frighten horses of ordinary gentleness that ordinary prudence required the use of any precaution to prevent that result.

I think this conclusion is wrong. There were no circumstances affecting the conclusion, except those stated in the finding, and from the nature of the case there could be no other. They were these: An ensilage machine within fifteen feet of the traveled road; the finding describes the construc-

tion and operation of this machine and states that in opera-
tion it made the noise necessary for such a machine, which
is equivalent to a statement that it made the startling noise
which a machine of that description must of necessity make;
the plaintiff was riding after a horse of ordinary gentleness,
driven by a competent driver accustomed to drive the horse
for four years; the machine was in operation, and the horse
was startled by its noise, and upset the wagon and the plain-
tiff was injured; the horse was being driven slowly and there
was no negligence on the part of the plaintiff; some horses
driven past this machine had shown that they were startled
by it, and many others were driven by without apparently
noticing it.

The necessary inference from these facts is that the ma-
chine in operation would frighten some horses of ordinary
gentleness; any other conclusion violates the plainest rules
of reason.

The use of a machine within fifteen feet of the highway,
producing a startling noise and calculated to frighten some
horses of ordinary gentleness, imposed on the defendants the
legal duty of at least using reasonable precautions for warn-
ing the traveling public of the danger to be encountered in
passing the machine.

The ultimate conclusion from the subordinate facts either
violates the plainest rules of reason, or the court failed to
apply to those facts the correct rule of law, and it is there-
fore erroneous.

The principle stated in *Nolan* v. *New York, N. H. & H.
R. Co.,* 70 Conn. 159, and followed in subsequent cases,
governs this case. A new trial should be ordered.