CARL STRESSMAN *vs.* ANTHONY VITIELLO ET AL.

ROGER STRESSMAN *vs.* ANTHONY VITIELLO ET AL.

SUSIE C. STRESSMAN *vs.* ANTHONY VITIELLO ET AL.

MALTBIE, C. J., HAINES, HINMAN, BANKS and AVERY, Js.

Argued December 1st, 1931—decided February 16th, 1932.

*William D. Shew,* for the appellant (defendant).

*Clarence O. Lister* and *George N. Foster,* for the appellees (plaintiffs).

AVERY, J.   These three actions were tried together to the jury, and verdicts returned in favor of the plaintiffs.   The defendant assigns as error the refusal of the trial court to set aside the verdicts, also certain instructions of the court, and certain rulings on evidence.

At the trial, it was conceded that on October 13th, 1929, at about seven-forty-five p.m., all three of the plaintiffs were passengers in a Dodge automobile owned and operated by Clark L. Hartley, which was

then being operated in a westerly direction along the Boston Post Road in the town of Branford. The surface of the road consisted of a cement strip about twenty feet wide with shoulders of gravel on either side. The weather was clear, the roadway was dry, it was dark, and all of the cars involved in the accident carried lights. The Hartley car was immediately preceded by a Durant, traveling in the same direction, owned and operated by the defendant Anthony Vitiello. At the same time, a Cadillac, owned by the defendant Lucy M. Davenport, was being operated in an easterly direction by Carl L. Johnson, her agent. When the Davenport and Vitiello cars, thus traveling in opposite directions, reached a point in the road a short distance east of a cement bridge located near a power house, they came into collision. Immediately thereafter, the Davenport car collided with that of Hartley. As a result of the second collision, the plaintiffs received injuries. At the point of the collision, there is a slight curve in the road, and the Vitiello and Hartley cars, traveling west, were on the outside of the arc, the Davenport car being on the inside.

There was testimony from which the jury might have found that the Davenport car was traveling at an excessive rate of speed, and crossed over the center line of the road to its left and struck the Vitiello car; and that the latter, immediately preceding the collision and at the time thereof, was on its own right-hand side of the center of the highway. It is the claim of the defendant that this testimony is incredible, the defendant's claim being founded upon the evidence of a police officer who arrived at the scene shortly after the collision and investigated the situation of the cars and the marks on the road. After stating that when he arrived he found the Hartley car upon its own right-hand side of the road and the Davenport car on the

same side a short distance from it, he stated that he observed marks leading to the latter. The mark commenced about one foot to the right of the center of the road and ran across the center, leading directly to the left front wheel of the Davenport car. It is the claim of the defendant that the commencement of this mark, being one foot to the right of the center line of the highway, shows that the defendant's car was on its own right-hand side at the time of the collision with that of Vitiello; and that its course afterward across the center of the road and into collision with the Hartley car was caused by the negligence of Vitiello in driving to his own left beyond the center of the road thereby colliding with the Cadillac. It is to be observed in regard to this claim that the jury were not bound to believe the testimony of the officer as to the location of the mark on the highway; but even if they did believe it, his testimony is not necessarily inconsistent with that of those witnesses who stated that the Vitiello car was at all times upon its own right-hand side of the road, and that the Davenport vehicle crossed the center line of the highway and struck it. It is not plain, from the evidence, whether the brakes were applied upon the Davenport car with sufficient force to lock the wheels and cause the mark on the surface of the highway, or if so, at what instant of time relative to the collision. Both the testimony and the mark on the road indicate that the course of the Davenport car was diagonally across the center line of the highway and onto the left side thereof. At what point in this course the collision occurred is not established by the tire mark alone. It may have been at the point where the tire mark commenced or at some other point in the course of the mark across the center line of the highway. The question was thus one plainly for the jury to determine upon all the evi-

dence in the case, and neither the trial judge nor this court would be justified in interfering with its decision on the conflicting evidence.

The defendant assigns as error, the action of the trial court in stating to the jury in the course of its instructions, as among the conceded facts in the case, that the collision between the Davenport and Vitiello cars occurred when they had reached a point in the road "about 100 feet east" of the bridge located near the power house. The claim of the defendant is that, by so stating the point of collision as "about 100 feet east" of the bridge, when in fact, as the defendant claimed in the testimony, the distance was much less, the defendant's version of the occurrence was prejudiced. This claim, however, is without merit. A reading of the charge as a whole clearly shows that the remark of the court, that the collision occurred at a point in the road "about 100 feet east" of the bridge, was only stated as an approximation and not as fixing the exact point of the collision, and the jury could not reasonably have understood it otherwise, or have been misled thereby.

With regard to the rulings on evidence, a physician, Dr. Liggett, had been called by the plaintiff Susie Stressman, to testify as to an operation performed upon her, and the reasonableness of the charge therefor. To contradict this witness upon the reasonableness of the bill, the defendant called a local doctor and attempted to qualify him as an expert. The operation upon Mrs. Stressman had been performed in New York, and the testimony of the plaintiff's physician had been that the charge was a reasonable charge for such an operation in New York. The doctor called by the defendant testified that while he had done some plastic surgery, he had done none of the type concerned in this case. Furthermore, he had no knowl-

edge of charges by New York physicians on plastic work of such a character, and of proper charges therefor. He had had no experience in New York hospitals except as an observer, and never had worked in a hospital there. On objection by the plaintiff, the court ruled that the local doctor had not been shown to be qualified to express an opinion as to the reasonableness of Dr. Liggett's charge for the surgical operation performed in New York on the plaintiff. In this, there was no error. "The determination of the qualification of an expert is largely a matter for the discretion of the trial court." *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 Atl. 370; *State* v. *Main,* 69 Conn. 123, 140, 37 Atl. 80; *Barber* v. *Manchester,* 72 Conn. 675, 684, 45 Atl. 1014.

The defendant further claims error in the admission of a photograph of the Hartley car. The only ground of objection made to the admission of the photograph, as appears from the record, was that it was not taken by the witness. The witness, Hartley, had stated that the photograph represented the condition of his car as it was after the accident, and that nothing had been done to the car or any change made in it between the time of the accident and the time the photograph was taken. Under these circumstances, error cannot be successfully predicated upon the action of the court in admitting the photograph into evidence. *Temple* v. *Gilbert,* 86 Conn. 335, 343, 85 Atl. 380; *McGar* v. *Bristol,* 71 Conn. 652, 655, 42 Atl. 1000.

It is also claimed by the defendant that the verdicts in the several cases were excessive. The verdict in favor of the plaintiff Roger Stressman was $300. There was testimony that he received several lacerated wounds of the scalp, necessitating the use of X-rays to determine the possible extent of the fracture; and, in addition thereto, a cut on the nose with a scar about

one inch long, a lacerated wound of the right wrist, a sprained right wrist, a lacerated wound of the small and middle fingers of the right hand; and, as a result of the accident, he was in a highly nervous condition for a short time and received anti-tetanus treatment because of the abrasions. As the result of this treatment, he was sick for twelve to fourteen days and required medical treatment. He was unable to attend school until three weeks after the accident. The medical expenses in his case amounted to $68.43.

The verdict in favor of Carl Stressman was $1500. There was testimony that he sustained a severe concussion of the brain and was rendered unconscious, causing sleeplessness and nervousness which continued up to the time of the trial. In addition thereto, his right hip was sprained, causing considerable pain and suffering. At the time of the accident, he was earning about $38 a week, and was incapacitated for about eleven weeks. His special damages, including loss of wages and medical bills, amounted to $504.58.

The plaintiff Susie C. Stressman received a verdict of $15,000. Her injuries are described at length. From the testimony, the jury could reasonably have found that the principal injuries received by her were to her nose and a sacroiliac sprain. She suffered a compound fracture of the nose, including laceration and breaking of the bones. This wound required several months to heal. Originally, it extended from the tip of her nose midway to her eye-brow, and required ten stitches to close. When it healed, it left her with a flattened nose and a permanent scar. The flattened nose resembled those frequently observed in persons suffering from syphilis and constituted an unsightly deformity, as the result of which it was necessary for her to resort to an expert in plastic surgery. In order to restore in part the shape of her nose, the surgeon in-

serted a transplant of ivory about one and one-half inches long and three eighths of an inch in width, which restored the shape of the organ but did not remove the scar which is permanent. The presence of this foreign substance is disagreeable and renders her more susceptible to diseases of the throat and nasal passages, and also slight changes in temperature cause discoloration of the nose and discomfort. In addition, Mrs. Stressman suffered a severe sacroiliac strain for which she was still under treatment at the time of the trial. In an attempt to overcome this injury, she has been obliged to wear a belt. She was confined to bed much of the time for a period of six months. Her injury necessitated frequent strappings, as a consequence of which she could do no work at home or continue her occupation as clerk in a department store, from which employment she received $14 a week. There was testimony, at the trial, that she would always have pain and trouble in her back. In addition to these two more serious injuries, she was greatly bruised by the accident about the eye and cheek, her knees were sprained, she was bruised about the body and legs, and one rib was fractured. Her special damage, including loss of earnings and medical expenses up to the time of trial, was $4904.15.

The trial court refused to set aside these verdicts. While the amount awarded the plaintiff Susie Stressman is large, in view of the evidence as to the exceptionally severe and permanent injuries and disfigurements sustained by her, we cannot say its action was so unwarranted as to require interference by this court; nor were the other verdicts excessive.

There is no error.

In this opinion the other judges concurred.