WILLIAM WALDRON, ADMINISTRATOR (ESTATE OF DAVID F. WALDRON) *v.* HOWARD M. RACCIO ET AL.

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, JS.

Argued April 3—decision released ·July 9, 1974

*Robert L. Trowbridge,* for the appellants (defendants).

*Jeremy G. Zimmermann,* with whom, on the brief, was *William J. Doyle,* for the appellee (plaintiff).

BOGDANSKI, J.  This action arose out of a collision between a motor vehicle and a pedestrian in the town of Hamden.  The vehicle was owned by the defendant Howard Paving Company and was operated by its employee, the defendant Howard M. Raccio.  The pedestrian, David F. Waldron, was killed instantly, and this wrongful death action was brought by the plaintiff, the administrator of his estate.  The complaint charged the defendant Raccio with several specifications of negligence.  Relevant to this appeal are the claims of negligence in driving at an unreasonable speed and in operating with an obstructed windshield.  The jury returned a verdict of $75,000 for the plaintiff.  The trial court refused to set aside the verdict, and rendered a judgment from which the defendants have appealed to this court.

The defendants have assigned error in the court's charge to the jury, in its rulings on evidence, and in its denial of their motion to set aside the verdict as excessive.  Other assignments of error have not

been briefed and are considered abandoned. *Multi-plastics, Inc.* v. *Arch Industries, Inc.,* 166 Conn. 280, 282 n.1, 348 A.2d 618.

Claims of error addressed to the charge are tested by the claims of proof as they appear in the finding. Practice Book §§ 609, 635; *Dinda* v. *Sirois,* 166 Conn. 68, 69, 347 A.2d 75. The defendants' sole challenge to the charge is that the evidence was insufficient to justify submitting the issue of excessive speed to the jury.

The plaintiff offered evidence to prove and claims to have proved the following facts pertinent to the issue of excessive speed: At approximately 11:20 p.m. on December 17, 1970, the decedent was crossing Dixwell Avenue in Hamden when he was struck and killed by the defendants' southbound vehicle. Dixwell Avenue is approximately sixty-one and one-half feet wide in the vicinity of the accident and has two travel lanes and a parking lane in each direction. The decedent was crossing near an intersection and was about three-quarters of the way across Dixwell Avenue when he was struck. The defendant Raccio saw him no more than two seconds before the collision, though the area was well lighted and the decedent was easily visible from fifty to sixty feet away. The windshield of the defendants' vehicle was streaked with and obscured by road dirt. Prior to the collision Raccio neither blew his horn nor applied his brakes. As a result of the impact the decedent, who weighed 145 to 150 pounds, was thrown thirty-two feet, four inches. Measured from the rear hub of the wheel, the defendants' vehicle left fifty-three feet, seven inches of skid marks. The vehicle sustained the following damage: a seven-inch crack in the passenger-side headlight cover, a

pushed-in grill with a break in the body surrounding the grill just below the front bumper on the driver's side, the removal of several square inches of paint, and several scrape marks on the engine cover.

The defendants offered evidence to prove and claimed that they had proved the following facts: The decedent was dressed in dark clothing and Dixwell Avenue is a blacktop road. The defendant Raccio was traveling at approximately thirty miles per hour prior to the accident. The vehicle's headlights, brakes and tires were in good operating condition, and the windshield was not obstructed. A car also going south passed the defendants' vehicle on the left and in the next instant Raccio saw the decedent run diagonally in front of and away from his vehicle. The decedent was struck immediately after the defendant Raccio saw him and applied his brakes. After impact and while the brakes were being applied, but before the vehicle came to a stop, the decedent was carried forward on the vehicle's hood.

From the foregoing claims of proof we conclude that there was sufficient evidence to justify the submission of the issue of unreasonable speed. "An unreasonable rate of speed would be a speed which was not safe considering the type of road, the amount of traffic thereon, the condition of the road, and the weather conditions. It would also include the physical condition of the driver and the general condition of the vehicle. The posted speed limit [not in evidence in the present case] is indicative of the maximum reasonable speed under optimum conditions." *Toomey* v. *Danaher,* 161 Conn. 204, 208, 286 A.2d 293. But a rate of speed within the posted limit is not necessarily conclusive of the issue

of reasonableness. *Michaud* v. *Gagne,* 155 Conn. 406, 412, 232 A.2d 326. Excessive speed may ordinarily be proved by circumstantial evidence, such as vehicular damage and distance traveled after the application of brakes, without expert testimony as to its significance. *Terminal Taxi Co.* v. *Flynn,* 156 Conn. 313, 318, 240 A.2d 881 (damage where one vehicle overtook and hit another); *Petrillo* v. *Kolbay,* 116 Conn. 389, 393–94, 165 A. 346 (distance traveled after the brakes were applied, where vehicle hit pedestrian).

In addition to testimony that the defendants' vehicle was traveling at about thirty miles per hour, there was other evidence from which the jury could have found unreasonable speed, including the damage to the defendants' vehicle, the skid marks, the distance the decedent was thrown, and the condition of the windshield. Expert opinion might have helped the jury to assess the significance of some of that evidence, but we cannot say that in its absence the jury lacked the competence to consider it.

The defendants rely on *Toomey* v. *Danaher,* supra, in arguing that, in the absence of expert testimony, there was insufficient evidence to submit the issue of unreasonable speed to the jury. In that case, a fiberglass vehicle driven on a high-speed limited access highway skidded 400 feet when its brakes were applied and then collided with a metal guardrail, sustaining heavy damage. The damage was the only evidence as to the speed of the vehicle. Under those special circumstances this court held that without expert testimony a jury could not reasonably have concluded from the damage to the vehicle that its speed had been so high as to be unreasonable.

The present case, however, is different from *Toomey.* Here, the collision was between a vehicle and a pedestrian, the accident did not occur on a high-speed roadway, and there was evidence as to the vehicle's speed and the reasonableness of that speed in the circumstances even apart from the damage it sustained. Cf. *Terminal Taxi Co.* v. *Flynn,* supra; *Petrillo* v. *Kolbay,* supra. "Under those circumstances it seems clear that the jury reasonably could have concluded, from common experience, that the speed of the . . . [defendants'] vehicle was excessive." *Toomey* v. *Danaher,* supra, 210.

The defendants also challenge the admission of testimony of Police Officer John J. Quinn as to the location on Dixwell Avenue of the collision, claiming that his testimony was not supported by subordinate facts. Officer Quinn testified that he had ten years' experience investigating accidents and that he had investigated this accident, arriving on the scene a few minutes after it had occurred. He further testified that he had received special training in motor vehicle accident investigation, including the determination of the point of impact. Over the defendants' objection he testified that he had determined the approximate point of impact in this case by locating debris, consisting of dirt and tar, which had fallen from the underside of the defendants' vehicle.

Expert opinion testimony as to the point of impact in a motor vehicle accident is proper provided the witness has been qualified and an adequate foundation for his testimony has been laid. See annot., "Admissibility of opinion evidence as to point of impact or collision in motor vehicle accident

case," 66 A.L.R.2d 1048; cf. *Finch* v. *Weiner,* 109 Conn. 616, 620-21, 145 A. 31. The trial judge has a broad discretion to determine the qualification of an expert. *Siladi* v. *McNamara,* 164 Conn. 510, 513, 325 A.2d 277; *Coffin* v. *Laskau,* 89 Conn. 325, 329, 94 A. 370. "[I]f any reasonable qualifications can be established, the objection goes to the weight rather than to the admissibility of the evidence." *Wray* v. *Fairfield Amusement Co.,* 126 Conn. 221, 224, 10 A.2d 600. "Some facts must be shown as the foundation of . . . an [expert's] opinion, but there is no rule of law declaring the precise facts which must be proved before such an opinion may be received in evidence. It is largely a matter of judicial discretion whether a witness has been shown to have sufficient experience and opportunity of observation to render his opinion of value." *Barber* v. *Manchester,* 72 Conn. 675, 684, 45 A. 1014; *Oborski* v. *New Haven Gas Co.,* 151 Conn. 274, 280, 197 A.2d 73. In light of Quinn's testimony as to his training, experience and investigation, the trial court did not abuse its discretion in admitting his opinion as to the point of impact.

The defendants also assign error in the ruling of the court admitting in evidence four photographs of the windshield offered to prove that it did not provide an unobstructed view. Quinn testified that two of the photographs were taken from outside the vehicle while it was still at the scene of the accident, and that the other two were taken shortly thereafter from inside the vehicle while it was in a garage. After he testified that the photographs fairly represented the condition of the windshield as he saw it at the accident scene, they were admitted into evidence. A photograph offered to prove the appearance of an object which cannot itself be inspected

by the jury must first be proved accurate. The accuracy sufficient for its admission is a preliminary question of fact to be determined by the trial judge. *Cunningham* v. *Fair Haven & Westville R. Co.*, 72 Conn. 244, 249, 43 A. 1047. "Ordinarily . . . [a photograph] should be substantiated by testimony that it is a correct representation of the conditions it depicts, and in so far as it is properly so authenticated it becomes evidence of those conditions." *Cagianello* v. *Hartford*, 135 Conn. 473, 475, 66 A.2d 83. Since Quinn testified that they were a fair representation, the photographs were clearly admissible. Their evidentiary weight was properly for the jury to consider. *Cagianello* v. *Hartford*, supra.

Although they concede that the court's charge on damages was proper, the defendants claim that the verdict of $75,000 was excessive and that the size of the award resulted from mistake, partiality, or prejudice. In support of that claim, the defendants argue that the court erred in admitting certain evidence as to the decedent's character. The plaintiff, who is the decedent's son, testified that while attending college he had lived at home with the decedent. On direct examination he was asked: "During that period of time, was your father helping to support you?" The defendant objected on the ground of relevancy. The court overruled the objection, whereupon the plaintiff testified that his father had helped to support him while he attended college, and that without his father's support he could not have afforded a college education. That testimony was a small portion of the total testimony claimed to be relevant to damage. In its charge on damages, the court cautioned the jury, in part, as follows: "[D]amages in a death case are based upon the loss to the estate. They are not based upon the

suffering or the sentimental loss which has come to the wife or other members of the family. They are not based upon any loss caused to relatives to whom damages claimed might be payable." We consider it improbable that the plaintiff's testimony prejudiced the defendants, particularly in view of the court's cautionary instructions. *State* v. *Bausman,* 162 Conn. 308, 314, 294 A.2d 312; *Schiller* v. *Orange Hall Corporation,* 144 Conn. 327, 330–31, 130 A.2d 798.

In any event, the trial court did not abuse its discretion by admitting the plaintiff's testimony. In a death action the plaintiff is entitled to damages "which would have compensated the deceased so far as money could do for the destruction of his capacity to carry on life's activities as he would have done had he not been killed." *Chase* v. *Fitzgerald,* 132 Conn. 461, 470, 45 A.2d 789. Although damages "cannot be based upon the value which a man would place upon his own life or upon any sentimental considerations"; *Chase* v. *Fitzgerald,* supra, 467–68; damages "are not restricted to those arising from the mere destruction of earning capacity." *Floyd* v. *Fruit Industries, Inc.,* 144 Conn. 659, 670, 136 A.2d 918. Accordingly, the parties in a death action are entitled to attempt to present an "over-all picture of the decedent's activities" to enable the jury to make an informed valuation of the total destruction of his capacity to carry on life's activities. *Moffa* v. *Perkins Trucking Co.,* 200 F. Sup. 183, 188 (D. Conn.). So, for example, evidence bearing on how "pleasurable" the decedent's future might have been is admissible; *McKirdy* v. *Cascio,* 142 Conn. 80, 86, 111 A.2d 555; as is evidence as to the decedent's hobbies and recreations. *Floyd* v. *Fruit Industries, Inc.,* supra, 676. In *Miner* v. *McKay,* 145

Conn. 622, 624, 145 A.2d 758, this court upheld a verdict for the death of a nine-year-old girl partly on the ground that she "gave promise of an adult life of at least average expectancy and rich in activities." In *Szela* v. *Johnson Motor Lines, Inc.*, 145 Conn. 714, 719, 146 A.2d 910, a verdict challenged as excessive was upheld where the jury could have found, among other things, that the decedent was happily married and enjoyed the company of his family. See also Speiser, Recovery for Wrongful Death § 3.54. The testimony to which the defendants object in the present case was evidence of the decedent's attachment to his family and therefore was admissible.

The defendants also challenge the award of $75,000 as excessive on its face. " '[T]he problem of estimating damages for the loss of . . . life with any exactness is . . . beset with insurmountable difficulties. The law, nevertheless, undertakes to do justice as best it can, although of necessity crudely. The solution of the problem is left to the trier's good judgment.' *Lane* v. *United Electric Light & Water Co.*, 90 Conn. 35, 37, 96 A. 155. For this reason we have frequently said that the amount of damages recoverable in actions for death is peculiarly within the province of the jury." *McKirdy* v. *Cascio*, supra, 84–85. "When it does not affirmatively appear that the jury were influenced by partiality, prejudice or mistake of law or fact, as by some circumstance which could improperly influence their deliberations or by a disregard of proper instructions or by an erroneous ruling of law, the question is whether the amount awarded is so large or so small as to offend the sense of justice and to compel a conclusion that the jury were moved by considerations not properly in the case." *Szela* v. *Johnson*

*Motor Lines, Inc.,* supra, 718. The trial court's refusal to set aside the verdict is entitled to great weight in our assessment of the claim that it is excessive. *Neal* v. *Shiels, Inc.,* 166 Conn. 3, 19, 347 A.2d 102.

The decedent was sixty-five years old at the time of his death. There was evidence that the normal life expectancy of a sixty-five-year-old man is thirteen years. The decedent's yearly take-home pay was approximately $7234, from which living expenses would have to be deducted in calculating damages. *McKirdy* v. *Cascio,* supra, 85–86. The decedent was due to be retired roughly two and one-half years after the accident, at which time he would have become eligible for a life pension of $90 per month. The defendants argue that yearly interest on the award of $75,000, with the corpus left intact, would greatly exceed the decedent's expected annual earnings, after living expenses, had he lived. In *Lengel* v. *New Haven Gas Light Co.,* 142 Conn. 70, 76–79, 111 A.2d 547, a similar verdict was held to be excessive, in part on the ground which the defendants now urge.

"It serves no useful purpose to compare a verdict in one death case with those in others. No one life is like any other, and the damages for the destruction of one furnish no fixed standard for others." *Fairbanks* v. *State,* 143 Conn. 653, 661, 124 A.2d 893. The plaintiff in this case presented an abundance of evidence, not present in *Lengel* v. *New Haven Gas Light Co.,* supra, which could legitimately have operated to enhance the award. For example, there was evidence that the decedent's health had been excellent and that the decedent had never had a serious or protracted illness. The jury could have con-

cluded that he would probably have remained in vigorous health and outlived the normal life expectancy. Cf. *McCoy* v. *Raucci*, 156 Conn. 115, 122, 239 A.2d 689. There was evidence that the decedent had no plans to stop working, that he had previously worked for a construction company, and that he had been skilled in carpentry, painting, and other crafts related to home maintenance and construction. The jury could have concluded that had he lived the decedent would probably have put his talents to gainful use after his retirement from his current employment. *Chase* v. *Fitzgerald*, supra, 469. There was also other evidence which the jury could properly have considered in fashioning their award: that the decedent had obtained joy and satisfaction from his active family life, that he had energetically pursued several hobbies, that he had been a happy and well-adjusted individual, and that he had anticipated future travel with his wife. The jury were entitled to believe the testimony most favorable to the plaintiff. *McCoy* v. *Raucci*, supra, 121. Presiding over the trial in a position to evaluate any situation in which "undue sympathy, partiality, prejudice or mistake of law" might have intervened to work an injustice was the trial judge, who did not find the verdict excessive. *Moffa* v. *Perkins Trucking Co.*, supra, 190; *Neal* v. *Shiels, Inc.*, supra. We cannot conclude that the size of the verdict offends a sense of justice or compels a conclusion that the jury must have been moved by improper considerations. *Szela* v. *Johnson Motor Lines, Inc.*, supra, 718.

There is no error.

In this opinion the other judges concurred.