[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: MOTION TOSET ASIDE VERDICT OR FOR REMITTITUR
On March 1, 1995, the plaintiff, Sara Gladstone, won a jury verdict from the defendants, Gloria and William Grinnan, in the amount of $7,400,000. The plaintiff had been severely injured when Gloria Grinnan had driven her automobile off the road and hit the plaintiff, who had been talking on a public telephone at the time.
On March 3, 1995, the defendants filed a motion to set aside the verdict. The defendants argue that the verdict should be set aside because it is contrary to the evidence, contrary to law, and excessive. In the alternative, they seek a remittitur of the $7,400,000 verdict. The defendants filed a memorandum in support of their motion to set aside the verdict or for remittitur on March 31, 1995. They also filed a supplemental memorandum on April 7, 1995, and a reply memorandum on June 9, 1995. The plaintiff filed a memorandum in opposition to the motion to set aside the verdict or for remittitur on May 25, 1995.
A motion to set aside a verdict is authorized by Practice Book § 326, which provides in part that "any civil judgment or decree rendered in the superior court may not be . . . set aside unless a motion to . . . set aside is filed within four months succeeding the date on which it was rendered or passed." Additionally, General Statutes § 52-228b provides in part CT Page 14142 that "[n]o verdict in any civil action involving a claim for money damages may be set aside except on written motion by a party to the action, stating the reasons relied upon in its support, filed and heard after notice to the adverse party according to the rules of the court."
"The trial court has the inherent power to set aside a jury verdict which, in the court's opinion, is either against the law or the evidence. . . . The decision to set aside a verdict involves the exercise of a broad discretion in the trial court which, in the absence of a clear abuse, will not be disturbed and, in reviewing the exercise of that discretion, every reasonable presumption should be indulged in favor of its correctness. . . . [The trial court] should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality." (Citations omitted; internal quotation marks omitted.). A-GFoods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 206-07,579 A.2d 69 (1990), quoting Champagne v. Raybestos-Manhattan, Inc.,212 Conn. 509, 555, 562 A.2d 1100 (1989).
"While such a motion should not be readily granted nor without strong reasons, it ought to be when there appears cause for which the court acting reasonably would feel bound in duty so to do." (Internal quotation marks omitted.). Steve Viglione SheetMetal Co., Inc. v. Sakonchick, 190 Conn. 707, 710-11,462 A.2d 1037 (1983). The court's action in setting aside a verdict is entitled to great weight because "the trial judge can sense the atmosphere of a trial and can apprehend far better than this court, limited to a printed record, what factors, if any, could have improperly influenced the jury." Fronczek v. Della Bitta-Bassola,Inc., 165 Conn. 102, 104, 328 A.2d 680 (1973).
"In ruling on the motion for remittitur, the trial court . . . [is] obliged to view the evidence in the light most favorable to the plaintiff in determining whether the verdict returned was reasonably supported thereby. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages CT Page 14143 or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption. . . . Every reasonable presumption in favor of the correctness of the court's refusal to set aside the verdict as excessive should be indulged and its ruling will not be disturbed unless there is a clear abuse of discretion." (Internal quotation marks omitted.) Goralv. Kenney, 26 Conn. App. 231, 240-41, 600 A.2d 1031 (1991), quoting Oakes v. New England Dairies, 219 Conn. 1, 13-14,519 A.2d 1261 (1991).
The defendants put forth five arguments in support of their motion to set aside the verdict or for remittitur.
I. Improper Jury Charge on Medicare/Medicaid Benefits
The defendants argue that the court improperly charged the jury concerning the Medicaid or Medicare benefits paid to the plaintiff. The defendants argue that the court's charge on Medicaid/Medicare addressed a non-existent problem and prejudiced the defendants in that "the charge created the significant possibility that the jury would then increase the damages. . . ."
The plaintiff maintains that the court properly charged the jury not to deduct medical expenses paid by Medicaid or Medicare from the economic damages it found. The plaintiff argues that testimony that the plaintiff received Medicare/Medicaid benefits was brought before the jury without objection from the defendants. Additionally, the plaintiff argues that the court's charge on Medicaid payments is a correct statement of law; therefore, the defendants' argument is flawed. Finally, the plaintiff argues that the charge in no way "created a significant possibility that the jury would increase the damages." The plaintiff claims that the charge instructed the jury not to deduct Medicare/Medicaid payments from the economic damages it found; it did not tell the jury to give extra damages because of these payments. Therefore, the plaintiff contends that the charge was proper and the motion to set aside or for remittitur should be denied.
The court's charge to the jury was as follows: "Now, a number of times during this trial, you heard evidence that certain of the plaintiff's medical expenses were or are being paid by Medicaid or Medicare. Both federal and state law require CT Page 14144 reimbursement of such medical expenses out of any damage award in this case. Those payments through Medicaid or Medicare are not gifts to the plaintiff, and you should not consider them as gifts and subtract them from any sums, from any economic damages which you find she may have incurred." Trial Transcript of February 28, 1995, p. 20.
General Statutes § 17b-94, formerly General Statutes § 17-83f, provides in part that: "[i]n the case of causes of action of beneficiaries of aid under [various sections] . . ., the claim of the state shall be a lien against the proceeds therefrom in the amount of the assistance paid or fifty per cent of the proceeds received by such beneficiary . . . ." Additionally, General Statutes § 52-225a provides in part that where a claimant seeks damages in a personal injury suit, and where "liability is admitted . . . and damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages . . . by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section. . . ."
"The collateral source rule provides that a defendant is not entitled to be relieved from paying any part of the compensation due for injuries proximately resulting from his act where payment [for such injuries or damages] comes from a collateral source, wholly independent of him. . . . The basis of our well-established collateral source rule is that a wrongdoer shall not benefit from a windfall from an outside source. That rule is applicable. . . in any tort case." (Citations omitted; internal quotation marks omitted.) Gurliacci v. Mayer, 218 Conn. 531, 556-57,590 A.2d 914 (1991). No Connecticut court has applied the collateral source rule specifically to Medicaid/Medicare payments. However, courts in other jurisdictions have found that the rule prevents a plaintiff's tort recovery from being diminished because of Medicare/Medicaid benefits received by the plaintiff "independent of the tortfeasor's procuration or contribution." Williamson v. St. Francis Medical Center, Inc.,559 So.2d 929, 934 (La.App. 1990). See also Merz v. Old RepublicIns. Co., 191 N.W.2d 876, 879 (Wis. 1971) (collateral source rule includes payments by Medicare); Johnson v. Commonwealth,461 S.W.2d 377, 379 (Ky.App. 1970) (same holding).
The court's instruction was a correct statement of law. CT Page 14145 Plaintiff's witness, Daniel Pollets, her clinical psychologist, testified at trial concerning Medicare/Medicaid. He discussed the fact that the rate paid by Medicaid is lower than the normal rates in the marketplace. This testimony could properly have led the jury to believe that the plaintiff may have had to reimburse Medicare/Medicaid for the money it expended on her behalf. The court's charge simply told the jury about the collateral source rule, that the jury should include all economic costs to the plaintiff because the plaintiff would have to reimburse money she received from Medicare/Medicaid. The instruction was not erroneous or prejudicial to the defendants.
II. Improper Jury Charge on Negligence of the Treating Physician
The defendants' second argument in moving to set aside the verdict or for remittitur is that the court improperly charged the jury concerning the potential negligence of the treating physician.
The court's charge to the jury was that "[a]n injured party can recover from the original person causing the injuries even for damages caused by the negligence of a doctor in treating the injury which the tortfeasor caused, provided the injured party used reasonable care in selecting the physician." Trial Transcript of February 28, 1995, p. 13.
The defendants claim that there was no evidence that any of the treating physicians in the case acted negligently. The defendants argue that this charge was prejudicial because it diverted the jury's attention from the issue of whether the plaintiff's paraplegia was proximately caused by the defendants' negligence. They further argue that the charge undermined the defendant's right to have a fair determination of their own negligent conduct.
The plaintiff counters that the court correctly charged the jury that the plaintiff could recover from the defendant for injuries arising out of the original injuries. She argues that the defendants contested that their negligence was the proximate cause of the plaintiff's paraplegia, therefore the charge was proper. The plaintiff further argues that the defendants should be liable for damages "resulting from the efforts of physicians treating the initial injuries — regardless of whether those efforts were done properly or negligently," and therefore the charge that the plaintiff could recover from the defendant for CT Page 14146 injuries arising out of the original injuries was proper. Finally, the plaintiff argues that the defendants could not be prejudiced by a charge referring to only negligent treatment, because the defendants were liable for injuries occurring from the negligent or proper treatment of the plaintiff.
"Evidence that one injured through the negligence of another did not receive the most approved medical or surgical treatment is not admissible, in accordance with the general rule, for the purpose of reducing damages; such evidence, however, may be admissible for the purpose of showing that an injured party had not used due diligence to obtain proper medical treatment. . . . For an injured party can recover from the original tort-feasor for damages caused by the negligence of a doctor in treating the injury which the tort-feasor caused, provided the injured party used reasonable care in selecting the doctor." (Citations omitted.) Anderson McPadden, Inc. v. Tunucci, 167 Conn. 584,595-96, 356 A.2d 873 (1975).
The defendants made no claim that the plaintiff failed to use reasonable care in selecting a doctor, but did make claims that the plaintiff's treating physicians may have been negligent. In fact, the defendants argue in their memorandum in support of their motion to set aside the verdict that they "did not admit that all her current maladies, and particularly her paraplegia, were caused by the accident." The Anderson case stands for the proposition that: the defendants are responsible for the damages caused by the plaintiff's doctors, even if they were negligent, as long as they were treating the injury caused by the defendants. It is not disputed that the injuries occurred while the plaintiff's doctors were treating an aortic rupture that occurred in the accident. Therefore, the charge was necessary to enlighten the jury on the issue of proximate cause, not to divert attention from the doctrine of proximate cause. The instruction was not erroneous or prejudicial to the defendants.
III. Evidence of Speed of the Defendants' Vehicle
The defendants argue that despite the defendants' admission of liability for the accident, the court admitted prejudicial evidence on liability. The defendants' specific objections are that several photographs of the damage to the defendants' car and to the porch of a house that the car hit were admitted into evidence, that testimony that the defendant Gloria Grinnan was travelling 45-50 M.P.H. was allowed by the court, and that CT Page 14147 testimony of the investigating police officer on various liability issues was allowed by the court. The defendants argue that this evidence was prejudicial and improperly admitted.
The plaintiff argues that evidence concerning the speed of the defendants' vehicle was relevant to the issue of causation and damages. The plaintiff argues that even though the defendants admitted liability, they did not admit that there was proximate cause for all the plaintiff's damages or even that all the damages claimed by the plaintiff were sustained. Therefore, the plaintiff argues that the evidence was properly admitted to resolve those issues. Finally, the plaintiff argues that the evidence was relevant to issues of causation and damages, that the evidence was more probative than prejudicial, and that the court properly admitted the evidence.
"Relevant evidence is evidence that has a logical tendency to aid the trier of fact in the determination of an issue." Hall v.Burns, 213 Conn. 446, 473, 569 A.2d 10 (1990). "Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value." Grayson v. Wofsey, Rosen, Kweskin Kuriansky, 231 Conn. 168, 193, 646 A.2d 195 (1994). "Speed is relevant to the severity of impact and, inferentially, to the injury sustained." Berndston v. Annino, 177 Conn. 41, 43,411 A.2d 36 (1979).
The question of whether the evidence challenged by the defendant in this action is admissible was resolved by the court in Berndston v. Annino, supra. In Berndston, the defendant admitted liability, and the jury only had to determine the nature, extent, and probable cause of the plaintiff's injuries. The trial court excluded evidence on the issues of speed and impact, but the supreme court reversed this decision. The court found that "[t]here seems to be a division of authority in many jurisdictions on similar cases. The prevailing view appears to support the proposition that, even though liability is fully admitted, evidence of speed, physical impact, and the like is admissible as relevant to the probable extent of personal injuries. . . . We conceive this to be a rational and logical approach to this problem." (Citations omitted; internal quotation marks omitted.) Id., 44-45. Accordingly, the court acted properly in permitting such evidence to be presented to the jury.
IV. Allowance of Police Officer Testimony on Speed
CT Page 14148
The defendants argue that despite the court's ruling that the investigating officer could not testify as an expert because he had not been disclosed properly pursuant to Practice Book § 220(d), the court improperly allowed that same officer to testify as to a minimum speed that the defendant was traveling as determined by the measuring of yaw marks on the road surface. The defendants contend that the admission of this evidence was harmful and damaging to the defendants, and was reversible error for the court to admit the testimony.
The plaintiff contends that the testimony of the police officer concerning the speed of the vehicle based on the length of skid marks is not necessarily expert testimony. In the alternative, the plaintiff argues that even if the officer's testimony was expert testimony, Practice Book § 220(d) permits the testimony to be admitted at the discretion of the court. Finally, the plaintiff argues that if the officer's testimony is expert testimony, its admission was harmless in that there was overwhelming, unrebutted evidence that the defendant was driving at an excessive speed.
The evidence which the defendants have objected to is part of the testimony of the police officer who investigated the accident, Officer Lubowicki. Lubowicki's testimony covered his observations of the scene of the accident. When the defendants objected to questions asked of the officer concerning yaw mark measurements, the court found that because Lubowicki had not been properly disclosed as an expert witness pursuant to Practice Book § 220(d), he could only testify as a lay witness. The court allowed the officer to testify as to the location of yaw marks and to testify which direction the car had been moving based on the positions of the yaw marks.
However, the defendants objected when the plaintiff asked the officer to use his mathematical tables to translate the length of yaw marks into a minimum speed. The basis of the defendants' objection was that the plaintiff was asking the officer to give expert testimony. The defendants argued that using yaw mark measurements to consult mathematical tables to determine a speed constitutes expert testimony because the officer was not testifying to something that he had observed or perceived, but to something that he concluded after consulting mathematical tables.
"As a rule, expert testimony is required `when the question CT Page 14149 involved goes beyond the field of the ordinary knowledge and experience of judges or jurors.'" Latham Associates, Inc. v.William Raveis Real Estate, Inc., 218 Conn. 297, 301,589 A.2d 337 (1991), quoting Bader v. United Orthodox Synagogue,148 Conn. 449, 454, 172 A.2d 192 (1961). Ordinarily, the issue of whether a person is travelling at excess speed may be proved by circumstantial evidence, "such as vehicular damage and distance traveled after the application of brakes, without expert testimony as to its significance." Madow v. Muzio, 176 Conn. 374,379, 407 A.2d 997 (1978). See also Hoelter v. Mohawk Service,Inc., 170 Conn. 495, 508, 365 A.2d 1064 (1976) (same holding).
However, when it comes to measuring a specific speed of a vehicle prior to the accident on the basis of skid marks and damage to the vehicle, expert testimony is required. Lutkus v.Kelly, 170 Conn. 252, 256, 365 A.2d 816 (1976); see also Thomasv. Commerford, 168 Conn. 64, 69, 357 A.2d 476 (1975); Waldron v.Raccio, 166 Conn. 608, 612, 353 A.2d 770; Toomey v. Danaher,161 Conn. 204, 210, 286 A.2d 293. "Before this testimony is admissible, however, a foundation must be established that the witness knew how to calculate the speed on the basis of certain physical laws or formulas, such as those relating to the coefficient of friction." State v. Russo, 38 Conn. Sup. 426, 440,450 A.2d 857 (1982, Daly, J.).
Lubowicki's testimony as to the minimum speed that the defendants' car was moving was expert testimony, and this court erred in allowing Lubowicki to testify as to a minimum speed. The officer based his testimony solely on measurements of yaw marks that he took from the scene of the accident, and from fitting those measurements into a formula to produce the minimum speed at which the defendants' vehicle was moving prior to the accident. This evidence was beyond the knowledge of ordinary judges and jurors, and must be considered expert testimony. The plaintiff accurately notes that recent opinions have allowed juries to reach conclusions as to excessive speed from skid marks. In this case, however, the officer was permitted to testify as to a specific minimum speed that the defendants' vehicle was travelling. Therefore, this court erred in allowing this testimony when it had already ruled that the officer could not testify as an expert witness.
In order for the defendants to get a new trial because of the court's erroneous ruling, they must show that the error was harmful to the defendant. Swenson v. Sawoska, 215 Conn. 148, 153, CT Page 14150575 A.2d 206 (1990). In a civil case, the party claiming error must show that the errant ruling likely affected the result of the case. Williams Ford, Inc. v. Hartford Courant Co., 232 Conn. 559,572, ___ A.2d ___ (1995). "If the testimony would tend to affect the verdict of the jury, it meets the test of materiality." Berndston v. Annino, supra, 177 Conn. 45.
This court's permitting Lubowicki's expert testimony was harmless error in light of the other speed testimony. One of the witnesses to the accident, Brant Voss, testified that he saw the defendants' car moving at a pace of about 45-50 miles per hour immediately prior to the accident, that he saw the car swerving erratically, that he saw the telephone on which the plaintiff was talking flying "directly straight up and like debris went off the car," that the defendants' car went "through the telephone pole, directly through the fence and hit the porch of the house," and that he saw the plaintiff lying on the ground bleeding from the head.
Another witness, Tracey Polce, testified that she saw the defendants' vehicle "pass the telephone pole, hit the pay phone, hit Sarah, and into the house," that the defendants' car was traveling "pretty fast," that the plaintiff was bleeding from the back of the head, and that immediately after the accident, Polce saw the plaintiff lying on the ground fifty feet from where she had been talking on the telephone.
Additionally, the non-expert testimony of Lubowicki included observations that the "yaw marks" from the defendants' car measured 113 feet, four inches, from the point where the car left the road, that the defendants' car had cracks in the windshield consistent with other testimony that the defendants' car hit the plaintiff, and that the plaintiff's body was found 51 feet, 10 inches, from the original point of contact with the defendants' car.
This court's rulings allowing Lubowicki's expert testimony, was harmless error. The police officer's testimony that the car was driving at not less than 47 miles per hour only added to the convincing testimony already given by Voss and Polce. The errant testimony was harmless and did not affect the result of the case.
V. Excessive Verdict
The defendants argue that the verdict, $1,600,000 for CT Page 14151 economic damages and $5,800,000 for non-economic damages, was excessive in both components. They argue that the evidence does not support a finding of $1,600,000 for economic damages, that at best it supports an economic award of $500,000-$600,000. Additionally, the defendants contend that plaintiff's counsel only suggested economic damages of $1,376,500. The defendants also argue that the non-economic damages are almost four times the amount awarded for economic damages, which is clearly excessive, and the court should lower the value to the amount the court thinks is a fair award.
The plaintiff argues that the verdict was justified because the plaintiff's injuries were severe, and the evidence supports the damage award she received. The plaintiff further argues that she suffered serious non-economic injuries as well, and that Connecticut case law favors the upholding of large jury awards in personal injury cases in which the plaintiff suffers extensive damages. The plaintiff notes that she supplied more than sufficient evidence to support the economic damages award, including evidence of past medical expenses, evidence of work history, and testimony concerning the need for future physical and psychiatric care. Additionally, she claims the non-economic award was not excessive.
The Connecticut Supreme Court has recently discussed the factors courts should consider when determining if a jury verdict is excessive. "Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . The amount of a damage award is a matter peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to this verdict is whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption." (Internal quotation marks omitted.) Grayson v.Wofsey, Rosen, Kweskin Kuriansky, supra, 231 Conn. 183, quotingMather v. Griffin Hospital, 207 Conn. 125, 138-39, 540 A.2d 666
(1988).
This verdict does not so "shock the sense of justice" as to compel the court to conclude that the jury made a mistake or was influenced by other factors. The jury awarded $1,600,000 for CT Page 14152 economic damages. In his closing argument, the plaintiff's attorney suggested to the jury that a reasonable amount of economic damages would be $1,376,500. In coming to this figure, the attorney said he had estimated the plaintiff's average earning capacity for the rest of her working life expectancy at $30,000 per year. The jury could have easily found this number to be low and increased the plaintiff's expected earning capacity. This would explain the difference between what the plaintiff's attorney suggested and what the jury awarded. In either case, the award of $1,600,000 in economic damages does not shock the senses as to compel the court to believe the amount awarded was unjust.
The jury also awarded $5,800,000 in noneconomic damages. Noneconomic damages are defined in General Statutes § 52-572h(b) as "compensation determined by the trier of fact for all nonpecuniary losses including, but not limited to, physical pain and suffering and mental and emotional suffering." "The award of damages for pain and suffering is peculiarly in the province of the trier, and will be sustained, even though generous, if it does not shock the sense of justice." (Internal quotation marks omitted.) Campbell v. Gould, 194 Conn. 35, 40, 478 A.2d 596
(1984).
"Damages may be awarded for pain and suffering, past, present and future, resulting from the injuries as long as the evidence affords a basis for a reasonable estimate by the trier of fact of the amount. . . . An award of damages for pain and suffering is peculiarly within the province of the trier of fact and the fact that it is difficult to measure pain and suffering in terms of money does not prevent a recovery for that element of damages. . . . Not only are damages for pain and suffering peculiarly for the trier of fact, but proper compensation for pain and suffering cannot be computed by a mathematical formula, and there is no ironclad rule for the assessment of damages." (Internal quotation marks omitted.) Vickers v. Jessup, 32 Conn. App. 360,372, 629 A.2d 457, cert. granted, 227 Conn. 922,632 A.2d 701 (1993).
The noneconomic damages awarded by the jury were not excessive in light of the evidence put forth in this action. The plaintiff was a twenty-two year old college student who was struck by the defendants' vehicle, which was being driven by the defendant in a reckless manner. As a result, the plaintiff was thrown fifty feet, and suffered serious injuries. In addition to her becoming a paraplegic, suffering a broken hip, fractured CT Page 14153 clavicle, dislocated right knee, fractured left elbow, and other physical injuries, the plaintiff has suffered severe psychological injuries that have affected her self-esteem. The loss of feeling in her lower body makes even the most simple of life's functions difficult. Given the evidence on the extent of the plaintiff's injuries, the jury's award of noneconomic damages does not shock the sense of justice.
Accordingly, the motion to set aside the verdict or for remittitur is denied as to all arguments.
Martin, J.