******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

ANDREA ULANOFF *v.* BECKER SALON, LLC, ET AL.
(AC 42834)

Elgo, Cradle and Suarez, Js.

*Syllabus*

The plaintiff sought to recover damages from the defendants, a salon and one of its owners, for injuries that she sustained when she walked into the glass doors at the entrance of the salon while attempting to enter the premises. Prior to trial, the defendants filed a motion in limine, seeking to prevent the plaintiff from entering into evidence a photograph of the entrance to the salon, which she had obtained from the salon's website. The photograph depicted the glass doors without any signage or handles. The defendants claimed that the photograph was irrelevant and unduly prejudicial, as it had been taken long after the date of the accident and had been photoshopped to remove signage and the handles from the doors. The trial court granted the defendants' motion. At trial, one of the plaintiff's witnesses, S, testified that she had helped to decorate the salon prior to its opening, approximately three weeks before the plaintiff's accident. Following the objection of the defendants' counsel, the trial court precluded the plaintiff from asking S about the appearance of the salon's entrance when she had been working there, including whether the doors had signage or handles. The jury returned a verdict for the defendants, and the trial court rendered judgment for the defendants, from which the plaintiff appealed to this court. *Held*:

1. The trial court improperly granted the defendants' motion to preclude the plaintiff from offering into evidence the photograph obtained from the salon's website: the defendants' counsel conceded that the trial court erred in determining that the plaintiff needed to establish the chain of custody of the photograph prior to introducing it into evidence; moreover, it was indisputable that the photograph was relevant, as it depicted the salon's doors, the appearance of which was central to the plaintiff's case; furthermore, the plaintiff had personal knowledge of the entrance to the salon and was prepared to testify that the photograph was a fair and accurate representation of the salon's doors on the day of her accident, and whether the photograph had been photoshopped and the extent to which it may have been altered went not to its admissibility but was a matter for the jury to consider in determining its evidentiary weight.

2. The trial court abused its discretion when it prevented the plaintiff from asking S about the appearance of the doors at the time she was decorating the salon: S's testimony regarding whether there were handles on the glass doors was relevant to a central issue in the case, and may have aided the jury in assessing the credibility of other witnesses who had testified about the appearance of the doors prior to the date of the accident.

3. The preclusion of evidence central to the plaintiff's case may have affected the outcome of the trial; accordingly, the plaintiff was entitled to a new trial.

Argued January 4—officially released September 28, 2021

*Procedural History*

Action to recover damages for personal injuries sustained as a result of the defendants' alleged negligence, brought to the Superior Court in the judicial district of Fairfield, where the matter was tried to the jury before *Bruno, J.*; verdict and judgment for the defendants, from which the plaintiff appealed to this court. *Reversed; new trial.*

*Igor G. Kuperman*, for the appellant (plaintiff).

*Cara K. Hale*, for the appellees (defendants).

*Opinion*

ELGO, J. The plaintiff, Andrea Ulanoff, who alleges she was injured when she walked into a set of glass doors, appeals from the judgment of the trial court, rendered following a jury trial, in favor of the defendants, Becker Salon, LLC (salon), and Becker Chicaiza.[1] On appeal, the plaintiff claims that the court erred when it precluded her from (1) introducing into evidence a photograph of the entrance to the salon, showing see-through glass doors with no lettering or handles, that was on the salon's website, and (2) questioning her witness, Vanessa Savio, about the appearance of the glass doors on a date previous to the date of the plaintiff's accident. She further claims that the cumulative effect of the court's erroneous rulings was harmful and likely affected the outcome of the trial.[2] We agree with the plaintiff's claims and, accordingly, reverse the judgment of the trial court.

The following facts, which reasonably could have been found by the jury, inform our review. Chicaiza and his business partner, Nathali Ocampo, owned and operated the salon, which opened at its 380 Greenwich Avenue location on January 22, 2015, in the town of Greenwich. The salon was located on the second floor of the building near the elevator, with at least one other business also on the second floor, which was operated by an investment manager, Krishen Sud. The plaintiff was a longtime customer of Chicaiza, who is a hair stylist, having utilized his services for many years, approximately three times per week, at the salon's previous location, which had been on Mason Street in Greenwich. After the salon opened at its Greenwich Avenue location, the plaintiff visited the salon at least twice, and as many as nine times, in the three weeks following the salon's January 22, 2015 opening.

On the morning of February 11, 2015, the plaintiff's friend, Mary Ida Piacente, drove the plaintiff to the salon. The plaintiff, a jewelry designer who owns a company in New York City, was on her way to a large jewelry show in Florida and wanted to get her hair done before her afternoon flight. Armand Delarosa was working at the salon's front desk when he heard the elevator open, and he briefly looked up to see the plaintiff rushing out of the elevator, with her head down, as she looked at her cell phone. Delarosa, who was on the telephone, then heard a loud bang. When Delarosa looked toward the entrance to the salon, he saw the plaintiff on the floor in the hallway. The plaintiff described the accident to the jury as follows: "I saw Armand Delarosa at the reception desk and walked right into the door—the glass doors that were not—not realizing they were glass doors and they were closed and walked into them."

Sud, the operator of the business adjacent to the

salon, heard a commotion and went into the hallway. He saw the plaintiff on the floor and helped her to sit up against a wall. Chicaiza and others from the salon also were in the hallway attempting to help the plaintiff. Chicaiza asked the plaintiff if she was okay and if she needed an ambulance. The plaintiff told the jury that she responded, "I'm fine, I'm fine. I think I'm fine. I don't know. I think I'm fine." The plaintiff then rose to her feet and made a call on her cell phone. Sud, seeing that the plaintiff was okay and on the phone, went back into his place of business. Chicaiza and others assisted the plaintiff into the waxing room of the salon. She had a large bump on her head, and Chicaiza tended to her. The plaintiff insisted she was "fine," and she wanted Chicaiza to style her hair. When Piacente came into the salon, she saw the plaintiff with ice on her head and on her knee. She waited while Chicaiza styled the plaintiff's hair. Piacente thereafter drove the plaintiff to Westchester Airport, where the plaintiff boarded a plane to Florida. The plaintiff later sought treatment for her claimed injuries.

On January 18, 2017, the plaintiff commenced the present case against both defendants, which sounds in negligence. The defendants asserted the special defense of comparative fault. Thereafter, the defendants, before the start of evidence, filed a motion in limine, which they later supplemented,[3] seeking to preclude the plaintiff from, inter alia, introducing into evidence a photograph of the entrance to the salon, which, the defendants asserted, had been taken long after the accident and had been photoshopped to remove the signage and the handles from the door before the photograph was uploaded to the salon's website. In their motion, the defendants argued that such evidence either was irrelevant or unduly prejudicial. The plaintiff filed an objection, arguing in relevant part that the photograph "supports the plaintiff's testimony that there [were] no door handles on the entrance glass doors on February 11, 2015," and, if the photograph was altered, such alterations were done by the defendants and not by the plaintiff. During a September 11, 2018 hearing on the motions in limine, the plaintiff's counsel argued that the plaintiff would testify that this photograph was a fair and accurate representation of the entrance to the salon on the date of her accident. The court granted the defendants' motion and precluded the plaintiff from attempting to offer the photograph into evidence during trial.

After trial commenced, one of the plaintiff's witnesses, Savio, who is the daughter of Piacente, was called to testify. Savio testified that she had helped to decorate the salon prior to its January 22, 2015 opening. When the plaintiff attempted to question Savio about the glass doors to the salon—whether they had signage or handles during the times she was at the salon—the defendants objected, and the court excused the jury.

Following the argument of counsel, the court precluded such questions.

Also during trial, the plaintiff filed a third amended complaint, removing all allegations against Chicaiza. The defendants again filed an answer and a comparative negligence special defense. The jury, on September 21, 2018, rendered a defendants' verdict, which was accepted by the court. This appeal followed. Additional facts will be set forth as necessary to our consideration of the plaintiff's claims.

On appeal, the plaintiff claims in relevant part that the trial court erred when it precluded her from (1) introducing into evidence a photograph of glass doors that had been obtained from the salon's website, and (2) asking Savio about the appearance of the glass doors prior to the plaintiff's accident. Additionally, the plaintiff claims that the cumulative effect of the court's erroneous rulings was harmful. After setting forth our standard of review, we will address each claim in turn.

"To the extent [that] a trial court's admission of evidence is based on an interpretation of [our law of evidence], our standard of review is plenary. . . . We review the trial court's decision to admit [or to exclude] evidence, if premised on a correct view of the law, however, for an abuse of discretion." (Internal quotation marks omitted.) *Weaver* v. *McKnight*, 313 Conn. 393, 426, 97 A.3d 920 (2014).

"The trial court's ruling on the admissibility of evidence is entitled to great deference. . . . [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence . . . [and its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion. . . . We will make every reasonable presumption in favor of upholding the trial court's ruling, and only upset it for a manifest abuse of discretion. . . . Moreover, evidentiary rulings will be overturned on appeal only where there was an abuse of discretion and a showing by the [appellant] of substantial prejudice or injustice." (Internal quotation marks omitted.) *Quaranta* v. *King*, 133 Conn. App. 565, 567, 36 A.3d 264 (2012).

I

The plaintiff first claims that the court improperly precluded her from introducing into evidence a photograph that had been obtained from the salon's website, showing the entrance to the salon, including the glass doors. She argues that "the trial [court insisted that] the plaintiff [had] to establish the 'chain of custody' [of] the photograph, or bring in a witness to testify about when and how the photograph was taken, [which] is a clear misapplication of evidentiary law." Additionally, the plaintiff contends that the photograph was relevant and "[t]he condition and appearance of the doors on the date of the accident was a crucial issue

in this case." The defendants argue that the photograph cannot be authenticated because it "was not a fair and accurate representation of the door in question" due to the fact that the plaintiff did not take the photograph herself, she could not identify the actual photographer, and there was no dispute that the original photograph had been altered before being placed on the salon's website. We conclude that the court improperly granted the defendants' motion to preclude the plaintiff from offering into evidence the photograph obtained from the salon's website.

Initially, we find it unnecessary to consider the plaintiff's argument that the court erred in determining that the plaintiff needed to establish the chain of custody of the photograph. The defendants' counsel, during oral argument before this court, readily conceded that the court erred in that respect. See Conn. Code Evid. § 9-1 (a) ("[t]he requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be"). Moreover, insofar as the court's discussion at the hearing could be read to imply that it also was holding that the photograph was not admissible because it had not been taken on the day of the accident, such a ruling clearly would be a misapplication of our law, and the defendants do not argue otherwise. See, e.g., *Booker* v. *Stern*, 19 Conn. App. 322, 333, 563 A.2d 305 (1989) ("fact that the photographs were taken a year [later] . . . goes to the weight that should be afforded that evidence, not to the issue of authenticity").

The defendants, however, continue to maintain their argument that the photograph could not be authenticated because it is not an accurate representation of the doors, there being no dispute that the photograph had been altered before being uploaded to the salon's website. We are not persuaded by the defendants' argument.

"Authentication . . . is viewed as a subset of relevancy, because evidence cannot have a tendency to make the existence of a disputed fact more or less likely if the evidence is not that which its proponent claims. . . . Our Code of Evidence [§ 9-1 (a)] provides that [t]he requirement of authentication as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the offered evidence is what its proponent claims it to be. . . . Both courts and commentators have noted that the showing of authenticity is not on a par with the more technical evidentiary rules that govern admissibility, such as hearsay exceptions, competency and privilege. . . . Rather, there need only be a prima facie showing of authenticity to the court. . . . Once a prima facie showing . . . is made to the court, the evidence, as long as it is otherwise admissible, goes to the jury, which will ultimately

determine its authenticity. . . . [C]ompliance with [§] 9-1 (a) does not automatically guarantee that the fact finder will accept the proffered evidence as genuine. . . . It is widely recognized that a prima facie showing of authenticity is a low burden." (Citations omitted; internal quotation marks omitted.) *State* v. *Manuel T.*, 337 Conn. 429, 453–54, 254 A.3d 278 (2020); see also *S. A.* v. *D. G.*, 198 Conn. App. 170, 183–84, 232 A.3d 1110 (2020).

In the present case, it is beyond dispute that the glass doors were central to the plaintiff's case. Accordingly, a photograph of these glass doors indisputably was relevant. See *State* v. *Kelly*, 256 Conn. 23, 64–65, 770 A.2d 908 (2001) ("photographic evidence is admissible where the photograph has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry . . . [and] it is not necessary [for the proponent] to show that the photographic evidence is essential to the case in order for it to be admissible" (citations omitted; internal quotation marks omitted)).

On the issue of whether the photograph could be authenticated by the plaintiff, there also was no dispute that the photograph the defendants' sought to preclude was an accurate depiction of the photograph *on the salon's website*. Furthermore, although the defendants repeatedly argued that the photograph had been photoshopped by the salon's photographer before being uploaded to the website, the plaintiff's counsel repeatedly told the court that the plaintiff was prepared to testify that the photograph accurately depicted the glass doors at the time of her accident. Whether the photograph had been photoshopped and the extent to which it had been altered is a matter for the jury's consideration after the presentation of the evidence; what is important to the authentication of the photograph is that the plaintiff, who had personal knowledge of the entrance to the salon, was prepared to testify that the photograph was a fair and accurate representation of the glass doors at the entrance to the salon on the day of her accident. See *Waldron* v. *Raccio*, 166 Conn. 608, 615, 353 A.2d 770 (1974) (Because "[the witness] testified that [the photographs] were a fair representation, the photographs were clearly admissible. Their evidentiary weight was properly for the jury to consider.").

Provided that the plaintiff's counsel was able, during trial, to establish a proper foundation for the admission of the photograph, it then would be up to the jury to determine the evidentiary weight of the photograph. See id.; see also *State* v. *Manuel T.*, supra, 337 Conn. 461 ("[q]uestions about the integrity of electronic data generally go to the *weight* of electronically based evidence, *not its admissibility*" (emphasis in original; internal quotation marks omitted)). Whether the jury would credit the defendants' purported evidence that

the photograph was not a fair and accurate portrayal of glass doors on the date of the accident or whether the jury would credit the plaintiff's purported evidence that the photograph accurately did portray the appearance of the glass doors on the date of her accident was a matter solely for the jury to decide when weighing the evidence and considering the credibility of the witnesses. See *State* v. *Manuel T.*, supra, 461; *Waldron* v. *Raccio*, supra, 166 Conn. 615. On the basis of the foregoing, we conclude that the court improperly granted the defendants' motion to preclude the plaintiff from offering the photograph into evidence.

## II

The plaintiff next claims that the court abused its discretion when it prevented her from asking Savio about the appearance of the glass doors, particularly whether there were handles on the doors, at the time Savio was decorating the salon. The plaintiff argues that, although the court ruled that such testimony would be irrelevant and violate prior orders of the court, the testimony clearly was relevant, and, contrary to what the court stated, it did not violate any prior court orders.[4] The plaintiff further argues that there was testimony concerning whether there were handles on the glass doors prior to the date of the accident, including from Dennis Grimaldi, the owner of the company that installed the doors, and from John Ceruzzi, a representative of the owner of the building in which the salon is located. The defendants argue that Savio's testimony about the glass doors "was irrelevant to the case at hand as . . . Savio's observations were [made] prior to the plaintiff's fall, before the salon was even open." We agree with the plaintiff.

In the present case, the plaintiff subpoenaed Grimaldi to testify at trial. During his testimony, Grimaldi stated that the glass doors at the salon had been installed by his company and that, although he had no personal knowledge of whether handles were on the glass doors at the time of the plaintiff's accident, his company requires that the glass doors be installed with handles. During cross-examination, Grimaldi explained that, when the salon ordered the doors, four sterling silver ladder door handles also were ordered, each of which was approximately one foot in length.

The next witness called to testify by the plaintiff was Savio. The plaintiff sought to have her testify regarding the appearance of the doors when she was decorating the salon. The defendants objected to this line of questioning, and the court excused the jury. During voir dire, Savio testified that the doors had no handles during the time she was decorating the salon. The plaintiff argued that such testimony was relevant because it demonstrated that the doors actually had been installed without handles. The court ruled in relevant part that such testimony was irrelevant because Savio had no

knowledge of whether the glass doors had handles at the time of the accident because she had last been to the salon approximately three weeks before the accident.

Thereafter, the defendants called Ceruzzi, a representative of the owner of the building, to testify. Ceruzzi testified that he had performed three or four walk-throughs of the salon between January 22 and February 11, 2015. Although he initially told the jury that he no longer recalled whether the glass doors to the salon had handles during his walk-throughs, the defendants refreshed his recollection with his deposition testimony wherein he had testified that the glass doors had handles during his walk-throughs.

Section 4-1 of the Connecticut Code of Evidence provides: " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence." Further, "[a]ll relevant evidence is admissible, except as otherwise provided by the constitution of the United States, the constitution of the state of Connecticut, the Code, the General Statutes or the common law. Evidence that is not relevant is inadmissible." Conn. Code Evid. § 4-2.

"One fact is relevant to another if in the common course of events the existence of one, alone or with other facts, renders the existence of the other either more certain or more probable. . . . Evidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence *tend to support* a relevant fact even to a slight degree, [as] long as it is not prejudicial or merely cumulative." (Emphasis added; internal quotation marks omitted.) *Reville* v. *Reville*, 312 Conn. 428, 461, 93 A.3d 1076 (2014).

"Relevance does not exist in a vacuum. . . . To determine whether a fact is material . . . it is necessary to examine the issues in the case, as defined by the underlying substantive law, the pleadings, applicable pretrial orders, and events that develop during the trial. Thus, the relevance of an offer of evidence must be assessed against the elements of the cause of action, crime, or defenses at issue in the trial. The connection to an element need not be direct, so long as it exists. *Once a witness has testified to certain facts, for example, his credibility is a fact that is of consequence to* [*or material to*] *the determination of the action, and evidence relating to his credibility is therefore relevant*—but only if the facts to which the witness has already testified are themselves relevant to . . . [a] cause of action, or [a] defense in the case." (Emphasis added; internal quotation marks omitted.) *S. A.* v. *D. G.*, supra, 198 Conn. App. 183–84.

We conclude that Savio's testimony regarding whether the glass doors had handles during the time

she was decorating the salon was relevant to this case and that such testimony also may have aided the jury in assessing the credibility of other witnesses, including Grimaldi. See generally *State* v. *Ferguson*, 260 Conn. 339, 353, 796 A.2d 1118 (2002) (party may impeach its own witness but "trial court must still ascertain whether the evidence sought to be used to impeach the witness is relevant"); *State* v. *McCarthy*, 197 Conn. 166, 176, 496 A.2d 190 (1985) ("The testimony of one witness of a party may be contradicted by the testimony of any other witness offered by that party. . . . Such contradiction, however, must take the form of factual evidence and no witness can be impeached by contradicting his testimony as to a collateral matter. . . . A contradiction is not collateral if it is relevant to a material issue in the case apart from its tendency to contradict the witness." (Citations omitted.)); *Schmeltz* v. *Tracy*, 119 Conn. 492, 498, 177 A. 520 (1935) (party may call witness to contradict another of her witnesses).

Whether there were handles on the glass doors was a central issue in this case. Witnesses, including Grimaldi and Ceruzzi, testified that there were handles on the glass doors before the date of the plaintiff's accident. Although Savio was not at the salon on the day of the plaintiff's accident, neither were Grimaldi or Ceruzzi. The defendants had maintained that the doors were installed with handles and that the handles had remained on the doors. Contrary to the defendants' contention, the plaintiff sought to have Savio testify that handles were not always on the doors. We conclude that the court erred when it determined that Savio's observations about the lack of handles on the glass doors was not relevant.

### III

The plaintiff also claims that the cumulative effect of the court's erroneous rulings was harmful because they likely affected the result of the trial.

"[E]ven if a court has acted improperly in connection with the introduction of evidence, reversal of a judgment is not necessarily mandated because there must not only be an evidentiary [impropriety], there also must be harm. . . . In the absence of a showing that the [excluded] evidence would have affected the final result, its exclusion is harmless." (Internal quotation marks omitted.) *Quaranta* v. *King*, supra, 133 Conn. App. 568.

In this case, the appearance of the glass doors on the date of the accident was a crucial issue. The plaintiff had testified that on her previous visits to the salon, the doors had remained open, but, on this visit, they were closed, and, having no signage or handles, she did not realize that they were closed when she attempted to enter the salon. Some witnesses testified that the glass doors did have handles—and that they were

installed with handles. Other witnesses testified that there were no handles on the doors on the date of the plaintiff's accident. The plaintiff sought to have Savio testify that, even before the salon opened, the doors had no handles, which could have led to an inference that, contrary to Grimaldi's testimony, the glass doors had been installed without handles.

The photograph that had been on the salon's website showed the entrance to the salon with two glass doors, no signage, and no handles. Although the defendants argued that the photograph had been photoshopped by the salon's photographer, the plaintiff was prepared to testify that the photograph was a fair and accurate representation of the glass doors at the entrance to the salon on the day of her accident. The jury, however, never saw a photograph of the entrance to the salon or its glass doors. The jury was required, instead, to try to imagine what the entrance may have looked like, although there was a photograph that the plaintiff's counsel proffered as a fair and accurate representation of how the glass doors appeared on the date of the accident when the plaintiff attempted to enter the salon. Certainly, the defendants could have countered such evidence with witnesses who supported their argument that the photograph that the plaintiff sought to offer into evidence had been photoshopped. The plaintiff, however, was denied the ability to show the jury what she contended she saw on the date of the accident as she approached the salon entrance. We are persuaded that the preclusion of this evidence, central to the plaintiff's case, may have affected the outcome of the trial. Accordingly, the plaintiff is entitled to a new trial.

The judgment is reversed and the case is remanded for a new trial.

In this opinion the other judges concurred.

[1] In her operative complaint, which was her third revised complaint, the plaintiff did not advance a claim against Chicaiza. Nevertheless, Chicaiza remains a defendant in the case because the plaintiff did not file a withdrawal of the action as to him. See Withdrawal, CT Judicial Branch Form JD-CV-41, available at https://www.jud.ct.gov/webforms/forms/CV041.pdf (last visited September 17, 2021). In this appeal, an appearance also was filed on Chicaiza's behalf.

[2] Because we conclude that these rulings were improper and were harmful, we need not consider the plaintiff's additional claims.

[3] The plaintiff also filed five motions in limine, which are not relevant to the claims on appeal.

[4] Insofar as the court also stated that testimony from Savio concerning whether the door had signage had been precluded by prior orders of the court, although we conclude that testimony regarding the lack of signage was unnecessary, we have not found any prior orders that forbade it. In the defendants' supplemental motion in limine, the defendants conceded that there was no signage on the door at the time of the plaintiff's accident. Additionally, after Savio testified, the defendants' counsel specifically stipulated that there was no signage on the door on February 11, 2015—thereby making testimony about signage unnecessary. We also note that, contrary to the court's statement that prior orders had forbidden questions about the appearance of the glass doors, we have examined the record and have not discovered any prior orders of the court that addressed whether testimony would be permitted as to the appearance of the doors prior to the plaintiff's accident. Accordingly, this aspect of the court's ruling was

improper. We therefore are left to determine whether the court erred when it concluded that Savio's testimony about the door handles was not relevant.

———————————————